NEWBURYPORT WATER CO. v. CITY OF NEWBURYPORT.

(Circuit Court, D. Massachusetts.    February 24, 1898.)

1. JUDGMENT—RES JUDICATA—MATTERS NOT CONCLUDED.
   A water company which has elected under a state statute to sell its property to the city, and has petitioned a court to appoint commissioners under such statute to appraise its value, is not thereby precluded from maintaining a bill in a federal court to test the constitutionality of the statute.

2. CONSTITUTIONAL LAW—DUE PROCESS OF LAW — COMPENSATION FOR CORPORATE FRANCHISES.
   A state statute, under which a water company is in effect compelled to convey its property to the city, under threat of municipal competition, and which in such case allows nothing for its franchise rights, or on account of its future earning capacity or good will, takes its property without due process of law, because without just compensation.

This was a suit in equity by the Newburyport Water Company against the city of Newburyport.   Heard on demurrer to the bill.

Robert M. Morse and Lauriston L. Scaife, for complainant.
Albert E. Pillsbury and C. C. Dame, for defendant.

COLT, Circuit Judge.   The present hearing was had on demurrer to the bill of complaint.   The principal question raised by the bill is whether the Massachusetts act of 1894 (chapter 474), as construed by the state court, is in violation of the fourteenth amendment of the constitution of the United States.   That act, as interpreted by the state court, allowed the complainant no compensation for the value of its franchises or on account of its future earning capacity or good will.   The demurrer assumes the truth of the allegations contained in the bill which are properly pleaded, and we will only refer to such allegations as we deem material.   It appears from the bill that the water company was duly incorporated under St. Mass. 1880, c. 235, for the purpose of furnishing the city of Newburyport with water, and that it conducted its business until January 29, 1895.   Section 11 of its charter provided that the city should have the right, at any time after 10 years from the date of the completion of the waterworks, to purchase the property, and all the rights and privileges of the company, at such price as might be mutually agreed upon, and, in case the water company and the city were unable to agree, the compensation was to be determined by three commissioners to be appointed by the state court.   The city did not avail itself of the right to purchase under this act.   In 1893 the legislature passed an act which authorized the city of Newburyport to supply itself with water.   St. 1893, c. 471.   By section 12 of the act of 1893, it was provided that, at any time within 60 days after the passage of the act, the water company might notify the mayor of Newburyport, in writing, that it desired to sell to the city its corporate property, and all the rights and privileges of the company, and to execute and deliver to the city proper deeds and instruments in writing, conveying to the city the property aforesaid:

"Provided, however, the legal voters of the city of Newburyport, at legal meetings to be called in the several wards of said city within six months after said

notification has been received as aforesaid, shall by a majority vote of the voters of said city present and voting thereon at said meetings, vote to purchase the aforesaid property upon the terms and conditions contained in this section, whereupon the property thus conveyed shall become the property of the city of Newburyport, and said city shall be liable to pay to said company the fair value of the property thus conveyed."

Section 13 provided that:

"After the vote provided for in section 12 of this act, or provided the Newburyport Water Company does not so notify the said mayor within the sixty days, this act shall be submitted to the legal voters of the city of Newburyport for their acceptance or rejection, at legal meetings to be called in the several wards of said city within eight months from the passage of this act, and shall take effect from and after its acceptance by a two-thirds vote of the voters of said city present and voting thereon at said meetings."

Within 60 days after the passage of this act the water company notified the city of its desire to sell under the provisions of the act. On August 25, 1893, the city, by a majority vote, declined to purchase the property, but on September 7, 1893, voted the acceptance of chapter 471 of the act of 1893, authorizing it to build new waterworks. The act of 1894 (St. 1894, c. 474), provided that within 30 days after the passage of the act the water company should notify the mayor of the city of Newburyport, in writing, that it desired to sell to the city "all the rights, privileges, easements, lands, waters, water rights, dams, reservoirs, pipes, engines, boilers, machinery, fixtures, hydrants, tools and all apparatus and appliances owned by said company and used in supplying said city and the inhabitants thereof with water, said city shall not proceed to supply water to itself or its inhabitants under the authority of chapter 471 of the Acts of the year 1893, unless it shall have first purchased of said company the property aforesaid, and said company is authorized to make sale of said property to said city, and said city is authorized to purchase the same." The act further provides for a meeting of the legal voters to vote upon the question of purchase, and that, if the city shall vote to purchase, the water company shall execute and deliver to the city proper deeds and instruments in writing "conveying to said city the property aforesaid, and said property thus conveyed shall thereupon become the property of said city, and said city shall pay to said company the fair value thereof, to be ascertained as hereinafter provided." And, further, that, in case the city and water company should be unable to agree upon the value of said property, the supreme judicial court shall appoint three commissioners to determine the fair value of said property for the purposes of its use by said city, and whose award, when accepted by the court, shall be final. "Such value shall be estimated without enhancement on account of future earning capacity or good will, or on account of the franchise of said company."

Within 30 days after the passage of this statute a meeting of the stockholders of the water company was held, and a vote was adopted to the effect that the company desired to sell to the city the property described in the statute, and notice of said vote was on the same day sent to the city; and on January 15, 1895, a majority of the legal voters of said city voted to purchase the property of the water

company; and on January 29, 1895, the water company conveyed its corporeal property to the city, and in paragraph 26 of its deed it purported to convey "all the rights, privileges, and easements heretofore acquired under chapter 235 of the Acts of the Legislature of Massachusetts for the year 1880, and now used by said company, of laying and maintaining water pipes and mains in said streets, and of making connections therewith for the purpose of supplying said city and the inhabitants thereof with water, and all property, property rights, corporate property, privileges, easements, waters, and water rights of said company, whether herein particularly described or not, and all the rights and franchises of said company, whether for supplying water to the city of Newburyport and the inhabitants thereof, and of collecting water rates therefor or otherwise, hereby conveying to said city all the rights, privileges, easements, lands, waters, water rights, dams, reservoirs, pipes, engines, boilers, machinery, fixtures, hydrants, tools, and all apparatus and appliances owned by said company and used in supplying said city and the inhabitants thereof with water." On January 31, 1895, the city took possession of the property of the water company, and, as the water company and the city were unable to agree upon the price to be paid for the property, the water company on February 7, 1895, petitioned the court for the appointment of commissioners, under the act of 1894. The commissioners were duly appointed, and their report, made February 3, 1897, showed that, in their view, the statute of 1894 excluded from their consideration any valuation of the franchise right of the company, or of its future earning capacity or good will. The questions of law were reserved and argued before the full court, and on June 14, 1897, the court rendered an opinion holding that the decision of the commissioners was correct, and that under the act of 1894 the city was not required to pay the water company anything for its franchises, future earning capacity, or good will. Subsequently the water company petitioned for a rehearing in the state court. The bill alleges that the value of the rights of the water company which were excluded by the commissioners amounted to $475,000, and that the state court held they were properly so excluded, under the act of 1894. The bill further avers that after the passage of the act of 1893, permitting the city to build competing waterworks, the water company petitioned the legislature that the city of Newburyport should, before supplying its inhabitants with water, purchase "the franchise, corporate property, and all the rights and privileges of said Newburyport Water Company." As a result of this petition, the legislature passed the act of 1894. The bill further avers that the action of the water commissioners, under the act of 1894, resulted in the deed of January 29, 1895; and that such conveyance by the water company "was voluntary in name and form only, and was in fact compulsory; and that said offer of sale and deed were made by said company to said city of Newburyport, 'under the threat of municipal competition' by said city, and to avoid the ruin which would have resulted from such competition by said city; and that the said acts by which said city came into and

obtained possession of the property described in said deed constituted a taking of such property in violation of the rights secured to plaintiff by the constitution of the United States." The bill (among other things) prays that chapter 474 of the act of 1894 may be decreed to be unconstitutional, and the deed canceled, and the property received thereunder restored to the complainant, or, if the defendant is permitted to retain the property upon paying to the complainant just compensation for the entire property, the amount of compensation may be ascertained, and the defendant be ordered to pay to the complainant the amount thereof. The defendant demurs to the bill for want of jurisdiction, want of equity, and on other grounds.

· It is contended that on the face of the bill this is an attempt to review and retry here a case between the same parties already tried and determined in the state court. The answer to this is that the constitutional questions set out in this bill were not raised in the state court, and could not have been drawn in question in that suit. Moore v. Sanford, 151 Mass. 285, 24 N. E. 323; Pitkin v. City of Springfield, 112 Mass. 509. In Moore v. Sanford the plaintiffs, in 1885, filed a petition under the statute for damages sustained by the taking of their lands, and in 1889 brought a bill in equity to test the constitutionality of the statute, and to set aside the taking as unconstitutional. In holding that the plaintiffs had a right, by an independent proceeding, to dispute the validity of the taking and the constitutionality of the act, the court said: "The plaintiffs were entitled to have the question of the constitutionality of the statute determined, and under their petition for damages they were, by necessary inference, compelled in that proceeding to admit that it was constitutional." If the question of the constitutionality of the act of 1894 was not open to the complainant in the proceeding in the state court, the objection that the complainant should have raised the question in that suit falls to the ground, and constitutes no defense to the present bill.

Nor do we think that the complainant is chargeable with such laches as to bar its right to bring this bill. The bill was brought before the suit in the state court was finally determined, and before the acceptance by the complainant of the award. Moore v. Sanford, ubi supra.

The fundamental question raised by the demurrer is whether the bill sets out a cause of equitable relief, or a "taking" of the complainant's property without "due process of law," or just compensation, in violation of the fourteenth amendment of the constitution of the United States. The bill alleges that the deed of the water company to the city under the act of 1894 was voluntary in name and form only, and was in fact compulsory, and was made under threat of competition by the city, and to avoid the ruin which would have resulted from such competition, and that this constituted a "taking," in violation of a constitutional right. We must assume, for the purpose of this demurrer, that the complainant took advantage of the act of 1894 under a threat of competition by the city

which would have been ruinous to its property, and that its subsequent acts and conduct resulted from such threat. It further appears that, under the construction given to the act of 1894 by the state court, no compensation was allowed the complainant for its franchise rights, further earning capacity, or good will.

In Swift Co. v. U. S., 111 U. S. 22, 4 Sup. Ct. 244, a payment made to a public officer in discharge of a fee or tax illegally exacted is not such a voluntary payment as will preclude the party from recovering it back. The court said:

"The question is whether the receipts, agreements, accounts, and settlements made in pursuance of that demand and necessity were voluntary, in such sense as to preclude the appellant from subsequently insisting on its statutory right. We cannot hesitate to answer that question in the negative. The parties were not on equal terms. The appellant had no choice. The only alternative was to submit to an illegal exaction or discontinue its business. It was in the power of the officers of the law, and could only do as they required. Money paid or other value parted with, under such pressure, has never been regarded as a voluntary act, within the meaning of the maxim, 'Volenti non fit injuria.'"

In Robertson v. Frank Bros. Co., 132 U. S. 17, 10 Sup. Ct. 5, it was held that the payment of money to a customs official to avoid an onerous penalty, though the imposition of that penalty may have been illegal, is sufficient to make the payment an involuntary one. The court, speaking through Mr. Justice Bradley, said:

"It was contended by the counsel for the government at the trial, and is contended here, that the payment of the duties complained of was a voluntary payment, inasmuch as the plaintiffs themselves made the additions to the entries and invoices, and that, therefore, they cannot recover back any part of the money so paid; and they requested the court below to instruct the jury to render a verdict for the defendant. This the court refused to do, and left it to the jury to decide, upon the evidence, whether the making of the additions was a voluntary act on the part of the plaintiffs, or done under constraint, in view of the penalty sure to be imposed in case it was not done."

In Chicago, B. & Q. R. Co. v. City of Chicago, 166 U. S. 226, 17 Sup. Ct. 581, it was held that a judgment of a state court, even if authorized by statute, whereby private property is taken for public use, without compensation made or secured to the owner, is, upon principle and authority, wanting in the due process of law required by the fourteenth amendment of the constitution of the United States; and that the defendant has been deprived of property without due process of law is not entirely met by the suggestion that he had due notice of the proceedings for condemnation, appeared, and was admitted to make defense. Demurrer overruled.