BOSTON AND MAINE RAILROAD *vs.* JOHN M. GRAHAM.

SAME *vs.* INTERNATIONAL TRUST COMPANY.

SAME *vs.* MARCUS MORTON.

SAME *vs.* ALFRED C. VINTON, executor.

Suffolk.    March 18, 1901. — May 22, 1901.

Present: HOLMES, C. J., BARKER, HAMMOND, & LORING, JJ.

*Corporation*, Ratification of Lease, Stockholders dissenting under St. 1900, c. 426, § 3, Jurisdiction under that section.

St. 1900, c. 426, ratifying the lease of the road of the Fitchburg Railroad Company to the Boston and Maine Railroad, provided in § 3, that dissenting·stockholders of either the lessor or the lessee might file with the clerk of the lessee writings declaring their dissent and that the shares of such dissenting stockholders should be acquired by the lessee, being valued as required by the act. It further provided that "Within thirty days from the filing of any stockholder's dissent, as above provided, the lessee shall file its petition with the supreme judicial court sitting within and for the county of Suffolk, setting forth the material facts and praying that the value of such dissenting stockholder's shares may be determined," and that thereupon after notice the court shall require the dissenting stockholder's certificate of stock to be deposited with the clerk of the court and shall appoint three commissioners to ascertain and report the value of the shares. Under this provision, the lessee filed petitions against certain holders of the preferred stock of the lessor who had filed their written dissent under the above provision, alleging that the respondents or the persons whose shares they held voted for the approval of the lease and were not entitled to the rights of dissenting stockholders, and prayed for a decree that the respondents were not entitled to have their shares purchased by the lessee under the above provisions or, in the alternative, if the respondents were so entitled, that they might be ordered to deposit their certificates and that commissioners might be appointed to appraise the value of their shares for purchase by the lessee. *Held*, that under the provisions of the section above named the court had jurisdiction to declare that the respondents were not entitled to the rights of dissenting stockholders under the act, as well as to grant the alternative relief in case they were so entitled, it being more convenient to allow the petitioner to try all questions in one proceeding than to require it to file a separate additional bill, the petitioner having to proceed within thirty days by the terms of the statute and there not being time to try first the one question and then the other.

St. 1900, c. 426, ratifying the lease of the road of the Fitchburg Railroad Company to the Boston and Maine Railroad, provided in § 3 as follows: "Every stockholder of either the lessor or the lessee shall be deemed to assent to the contract of lease authorized by this act, unless within ninety days from the first day of July in the year nineteen hundred he shall file with the clerk of the lessee a writing declaring his dissent therefrom. . . . The shares of any stockholder dissenting as above specified shall be acquired by the lessee and shall be valued and the value thereof be paid or tendered or deposited to or for the account of

such stockholder." *Held,* that this provision did not require the lessee to buy the shares of stockholders who voted for the lease and then after the passage of the statute filed written declarations of dissent.

FOUR PETITIONS under § 3 of St. 1900, c. 426, entitled " An Act to ratify and confirm the contract of lease between the Boston and Maine Railroad and the Fitchburg Railroad Company," brought by the Boston and Maine Railroad, the lessee, severally against John M. Graham, the International Trust Company, Marcus Morton, and Alfred C. Vinton, executor under the will of Stephen H. Cutter, holders of preferred stock of the Fitchburg Railroad Company, the lessor, filed at different dates from October 27, 1900, to February 12, 1901.

In each case the respondent demurred.

The cases were heard by *Lathrop,* J., who at the request of the parties reserved them upon the petitions and demurrers for the consideration and determination of the full court.

St. 1900, c. 426, by its terms was made to take effect upon its passage.

The first sentence of the first section of that statute is as follows : " The contract of lease between the Boston and Maine Railroad and the Fitchburg Railroad Company, as heretofore approved by a majority of the stockholders of each corporation at meetings called for the purpose, is ratified and confirmed, and the lessor and lessee and each of them are hereby granted all power and authority necessary and proper to give the terms of said contract full operation and effect."

In the contract of lease the Fitchburg Railroad Company was the lessor, and the Boston and Maine Railroad the lessee. The second section of the statute authorized the sale to the lessee, for $5,000,000, payable in three per cent bonds, of fifty thousand shares of the common stock of the lessor owned by the Commonwealth, and also sanctioned the issue, pursuant to the terms of the lease, of bonds by the lessee for the purchase by the lessee, upon the same terms, of the remainder of the common stock of the lessor held by private owners.

In the third section of the statute it was provided that " Every stockholder of either the lessor or the lessee shall be deemed to assent to the contract of lease authorized by this act, unless within ninety days from the first day of July in the year nine-

teen hundred he shall file with the clerk of the lessee a writing declaring his dissent therefrom and stating the number of shares held by him and the number of the certificate or certificates evidencing the same: . . . The shares of any stockholder dissenting as above specified shall be acquired by the lessee and shall be valued and the value thereof be paid or tendered or deposited to or for the account of such stockholder in the manner following: " This section further made it the duty of the lessee, within thirty days from the filing of any such dissent, to file its petition with the Supreme Judicial Court for the county of Suffolk, setting forth the material facts, and praying that the value of such dissenting stockholder's shares might be determined, followed by further provisions in the same section establishing a method for a valuation of such dissenting stock, first by three commissioners, and after their report, upon the request of either party, by a jury, and for the payment by the lessee of such value of such dissenting stock when thus finally ascertained to the respective holders thereof, and the acquisition thereby of such stock by the lessee as its own property. Among other powers conferred by this section upon the court was the following: "Said court may make all such orders for the enforcement of the rights of any party to the proceeding, — for the consolidation of two or more petitions and their reference to the same commissioners ; or for the consolidation of claims for a jury and the trial of two or more cases by the same jury ; and for the payment of interest upon the value of the stockholder's shares, as determined, and the payment of costs by one party to the other, — as justice and equity and the speedy settlement of the matters in controversy may require."

Each of the petitions alleged that the respondent therein named had filed, as a holder of the preferred stock of the lessor, with the petitioner's clerk, within the time limited in the statute, his writing declaring his dissent from the contract of lease, and further proceeded to set forth facts, by reason whereof it was alleged by the petitioner that the respondent in each case was not entitled to the benefits of the third section of the statute, which required the petitioner in effect to become the purchaser of the shares of dissenting stockholders of either the lessor or the lessee.

The petition against Graham alleged as the reason why he was not entitled to dissent, that the lease was approved by a majority of the stockholders of the Fitchburg Railroad Company, at ,a meeting held for the purpose on March 21 and 22, 1900, and that Graham was present at this meeting and voted his stock in favor of approving the lease.

The petition against the International Trust Company alleged as the reasons why that company was not entitled to dissent, that on June 30, 1900, the day when the statute took effect, the trust company was not the registered holder of any shares of the Fitchburg Railroad Company, and did not become the registered holder of the three hundred and fifty shares specified in its notice of dissent until September 27, 1900 ; that on March 21, 1900, the registered holder of these three hundred and fifty shares was the Treasurer and Receiver General of the Commonwealth, from whom the title passed by assignment dated June 4, 1900, to trustees for the National Assurance Company of Ireland, and from these trustees to the International Trust Company by assignment dated June 5, 1900; also that the lease was approved by a majority of the stockholders of the Fitchburg Railroad Company, at a meeting held for the purpose on March 21 and 22, 1900, and that the Treasurer and Receiver General of the Commonwealth, the then holder of the three hundred and fifty shares, was present at this meeting and voted these shares in favor of approving the lease.

The petition against Morton alleged as the reason why he was not entitled to dissent, that on June 30, 1900, the day when the statute took effect, Morton was not the registered holder of any shares of the Fitchburg Railroad Company, and did not become the holder of the fifty shares specified in his notice of dissent until August 25, 1900; also that the lease was approved by a majority of the stockholders of the Fitchburg Railroad Company, at a meeting held for the purpose on March 21 and 22, 1900, and that the then holders of these fifty shares, since acquired by Morton, were present at this meeting and voted these shares in favor of approving the lease.

The petition against Vinton, executor, alleged as the reason why he was not entitled to dissent, that the lease was approved by a majority of the stockholders of the Fitchburg Railroad

Company, at a meeting held for the purpose on March 21 and 22, 1900 ; and that neither Vinton, executor, nor his testator was then the registered holder of any of the twenty shares of stock specified in his notice of dissent, but that these shares since had been transferred to Vinton as such executor ; also that the then holders of thirteen of the twenty shares were present at the meeting of the stockholders and voted these thirteen shares in favor of approving the lease. It was not alleged that Vinton, executor, was not the owner of the thirteen shares on June 30, 1900, nor that he first became the registered holder thereof after that date.

The respondents severally demurred to the petitions, substantially on two grounds :

First : That the court had no jurisdiction to determine whether the respondents were or were not entitled to dissent from the contract of lease ; but had under the statute jurisdiction only to appoint commissioners to ascertain the value of the shares.

Second : That the facts set forth by the petitioner in each case, as the reasons why the several respondents had no right to dissent from the contract of lease, were not sufficient in law to deprive them of that right.

*R. M. Morse,* for the respondents.

*L. S. Dabney,* for the petitioner.

HOLMES, C. J.    These are petitions brought under St. 1900, c. 426, for the purpose of having determined the value of stock belonging to stockholders in the Fitchburg Railroad who dissent from the lease of that road to the Boston and Maine Railroad sanctioned by the above named act. The petitions also have an alternative aspect, and allege that the respondents, or earlier holders of their stock, voted in favor of the lease at a meeting held on March 21 and 22, 1900, and that therefore they are not entitled to dissent or to have their stock valued and purchased. Two of the petitions also allege that the respondents were not stockholders at the date of the passage of the act, and for that reason also are not entitled to the benefit of it. The respondents demur on the grounds that the court under the act has jurisdiction only to appoint commissioners, and cannot determine the questions raised, and that the facts alleged do not deprive the respondents of the benefits of the act.

We shall spend no time on the question of procedure. The petitioner had to proceed within thirty days by the terms of the statute. If it did not buy dissenting stock under the statute, it had to take the risk of the lease being held to be void as against the dissenting holders. *Dow* v. *Northern Railroad*, 67 N. H. 1. See *Durfee* v. *Old Colony & Fall River Railroad*, 5 Allen, 230. Of course it was not bound to admit the right of the stockholder to dissent, *Moore* v. *Sanford*, 151 Mass. 285, 286, and it is more convenient to allow it to try all questions in one proceeding than to put it to a separate bill, and merely to allow it to save its rights in this proceeding by a *protestando*. It is unnecessary to consider whether, if there were time to try first the one question and then the other, we should adopt a different rule, as in *Smith* v. *Valence*, 1 Rep. Ch. 90, a bill to redeem with an attempt to dispute the mortgage, or as in the case of a statutory petition for a jury to assess damages for a taking by eminent domain. *Pitkin* v. *Springfield*, 112 Mass. 509.

The more important question raised by the demurrers is whether the statute, as a condition of its ratification of an already executed lease, required the lessee, the petitioner, to buy all the stock of any member of either corporation, lessor or lessee, that saw fit to file a written declaration of dissent, although he previously had taken part in the corporate act by which the lease was made, and had voted for it upon the same stock which he now undertakes to sell. It seems to us unreasonable to suppose that the obligation of the lessee was meant to be so large.

Apart from the statute, of course those who had voted for the lease could not complain. *Boston, Concord & Montreal Railroad* v. *Boston & Lowell Railroad*, 65 N. H. 393, 400. The statute recognizes that the lease has been approved by a majority of the stockholders, and imparts its authority in the form of a ratification. " The contract of lease . . . as heretofore approved by a majority of the stockholders of each corporation . . . is ratified and confirmed." It seems unlikely that an act thus made irrevocable in its effect upon the corporation should be intended at the same moment for the first time to become revocable as to the member who did it. It is unlikely that the Legislature should see any justice in giving to such a member a

right to compel the corporation to buy him out, when such a right never would have been thought of except as a constitutional means of meeting *bona fide* dissent from an act for which he was responsible. See N. H. St. 1889, c. 5; Pub. Sts. c. 156, § 28. A similar result was reached without the aid of statute in *Treadwell* v. *Salisbury Manuf. Co.* 7 Gray, 393, 406.

Apart from the theoretic absurdity to which the respondents' construction of the statute would lead, that is to say, the possibility that the petitioner might be required to buy all its own stock as well as all that of the lessor, it very well might lead in fact to a relation essentially different from that contemplated by the act, because it very well might result in the lessee becoming the principal owner of the stock of the lessor.

The respondents base their argument upon the words of the act, but the words of the act are far less stringent than the argument implies. It is true that in § 3 the words "every stockholder" occur. But the provision is that every stockholder shall be deemed to assent to the contract unless he shall file his dissent within ninety days, — which is very different from a provision that every stockholder may file a dissent. The universality of "every" is directed toward the obligation to dissent within a certain time, not to the right to dissent, which is left to be determined by whatever tests may be proper. The strongest and indeed the only phrase from which an argument can be drawn comes later. "The shares of any stockholder dissenting as above specified shall be acquired by the lessee." But here, again, the universality of the word "any" as easily may be taken as applying to stockholders having a right to dissent otherwise determined, as to all the stockholders of both roads. One interpretation is as idiomatic and natural as the other, and in our opinion that which we adopt is the only one consistent with justice and sense.

*Demurrers overruled.*