MARY J. MOORE & others *vs.* JOHN E. SANFORD & others.

Suffolk.    January 20, 1890. — February 28, 1890.

Present: FIELD, DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Eminent Domain — Constitutional Law — Election between Remedies*
*— Waiver — Equity.*

If a statute authorizes the taking of land by eminent domain, and provides for an application for a jury to assess the landowners' damages within a time limited, an owner, by seasonably filing an application, does not waive the right, while it is still pending and before the assessment of damages, to file a bill in equity to test the validity of the taking.

A non-resident, who was ignorant of the taking of his land under a special statute until near the end of the year allowed for applying for damages, thereupon, in 1884, filed a petition therefor. Pending negotiations for a settlement, no answer was filed until 1886, and nothing was done towards a trial until the appointment of an auditor in 1887. The petitioner then informed the respondent that he in-

tended to test the validity of the taking, and the constitutionality of the statute, as well as the auditor's right to proceed; but for a year did nothing because of the ill health of his counsel. He then retained other counsel, who forthwith brought a bill in equity to test the validity of the taking and of the statute, the auditor having heard only a part of the case. *Held*, that he had not by any election or waiver deprived himself of the right to maintain the bill.

The St. of 1884, c. 290, authorized the taking by the Commonwealth of certain lands and flats for the improvement of the harbor of Boston, and for furnishing better and more complete accommodations for the railroad and commercial interests of that city, and provided for the compensation of the landowners. *Held*, that the taking contemplated was for a public use and that the statute was constitutional, although an incidental and private advantage might result to the Commonwealth by the sale of other lands of its own benefited thereby.

BILL IN EQUITY, filed February 6, 1889, against the harbor and land commissioners, by residents of New York and Arizona, owners of three undivided eightieths of a parcel of flats in that part of Boston called South Boston, taken by the commissioners, under the authority of the St. of 1884, c. 290, to set aside such taking as invalid. *Knowlton*, J., reserved the case, upon the pleadings and agreed facts, for the consideration of the full court. The facts appear in the opinion.

*C. T. Gallagher & H. R. Bailey*, for the plaintiffs.

*H. N. Shepard*, for the defendants.

DEVENS, J. The first question presented by the report is whether the plaintiffs, by filing their petition under chapter 290 of the Acts of 1884, for the damages sustained by the taking of their lands under the authority given by that act, have admitted the validity of the taking, and thus waived any right by a proceeding such as that adopted in the case at bar to dispute the validity of the taking, and the constitutionality of the act assuming to authorize it.

This cause does not belong to that class of cases where the selection of one remedy necessarily implies that any other remedy, or any ground therefor, is waived. It certainly would be unjust if a party, who reasonably deemed that a statute by authority of which his property was taken was unconstitutional, should be compelled to elect whether he would seek for damages under the statute, and thus formally admit that this property was lawfully taken, or abandon any claim therefor, and rely solely on his remedy for an unlawful taking. As in statutes of the nature of that which we are considering, the time within

which damages may be applied for is usually limited, it would be quite probable that, before a decision could finally be reached as to the validity of the taking, the time within which he could apply for damages would have expired; and if such taking were held valid, he would thus be deprived of any remedy to recover the value of his property. His only safe course would be to file a petition for his damages under the statute, while he proceeded by other means to test its constitutionality. If, in the latter proceeding, it was held that the taking was valid, he could then proceed under his petition for damages.

The plaintiffs were entitled to have the question of the constitutionality of the statute determined, and under their petition for damages they were, by necessary inference, compelled in that proceeding to admit that it was constitutional. *Pitkin* v. *Springfield*, 112 Mass. 509. But the mere fact that they filed a petition for the purpose of saving their rights to damages if their view of the constitutionality of the statute proved erroneous, ought not to prevent them from having that question settled in another proceeding to which the inquiry was appropriate. Perhaps if they had voluntarily proceeded to judgment in their petition, — for the plaintiffs ought not to be allowed to experiment in order to ascertain what damages they might obtain before testing the constitutionality of the act, — certainly if they had collected the damages which had been awarded under such a petition, — it would be held that they had finally elected this as their remedy, and that they could not afterwards test the constitutionality of the statute to which they had thus given full assent. But the same effect should not be given to a petition filed only as a prudent precaution to guard their rights in a contingency that might thereafter arise.

In the case at bar, it appears that the plaintiffs, living at a distance from the Commonwealth, knew of the taking of their land only toward the expiration of the year limited by the statute for the filing of an application for a jury to assess the damages; and that they filed their petition hurriedly in order to protect such rights as they might have. While this took place in 1884, no answer to the petition was filed until 1886, nor was any movement made by either party for a trial of the petition until 1887, there having been negotiations between the parties

looking to a settlement. An auditor was appointed in 1887 to hear the petition for the assessment of damages. Before this time, and before proceeding with the auditor, the counsel of the plaintiffs informed the defendants that they intended to dispute and test the validity of the taking, and the constitutionality of the act, and the right of an auditor to proceed. It further appeared, that during the year which followed the then counsel for the plaintiffs became incapacitated by ill health, and was compelled to go away for nearly a year, and that on his return other counsel was retained, who brought this bill forthwith. While an auditor was appointed, the case is still pending before him, only a small part of the plaintiffs' evidence having been heard. Under these circumstances they have not by any election deprived themselves of the right to test the validity of the taking. The delays which have occurred appear, with the exception of that resulting from the ill health of their counsel, to have occurred from causes for which the parties were mutually responsible.

It is not contended by the plaintiffs that any requirement of the statute was omitted in the taking of their land, or that proper provision was not made for compensation to them, but they urge that the statute is unconstitutional, as the taking of the land which it authorized was not for a public use. While the determination of the Legislature is not conclusive that a purpose for which it directs property to be taken is a public use, it is conclusive, if the use is public, that a necessity exists which requires the property to be taken. In determining whether a statute is within the legitimate sphere of legislative action, all reasonable presumptions are to be made in favor of its validity, and it must be so regarded, unless it is shown to be otherwise by those who assail its constitutionality. *Wellington, petitioner*, 16 Pick. 87, 96. *Opinion of Justices*, 8 Gray, 21. *Talbot* v. *Hudson*, 16 Gray, 417. The purposes of the act as declared therein, its general structure, the nature of its provisions, its probable operation and effect, are all to be considered in determining whether it is a lawful exercise of legislative power.

If we examine the statute of 1884, we find that, while it was contemplated that the flats owned by the Commonwealth, when

filled, would be sold, and that thus a possible pecuniary benefit would accrue to the Commonwealth, yet that the right of eminent domain, which was to be exercised by taking certain flats owned by others without which the reclamation of its flats could not be effected, was for the avowed purpose of improving the harbor of Boston, and also of providing better and more complete accommodations for the railroad and commercial interests of the city by the solid land which would take the place of the flats over which the tide ebbed and flowed. The statute declares, in § 1, that " for the purposes of the reclamation of the Commonwealth's flats at South Boston, and the improvement of Boston Harbor, contemplated and authorized by chapter two hundred and thirty-nine of the Acts of the year eighteen hundred and seventy-five, . . . the board of harbor and land commissioners is hereby authorized to take, in the name and behalf of the Commonwealth," certain lands, of which the statute of 1875 had authorized the purchase. The act of 1869, c. 446, authorized the board of harbor and land commissioners to make certain purchases of flats for the purpose of making more available for sale the flats of the Commonwealth " in the harbor of Boston, and perfecting the improvement of the same." The act of 1875, c. 239, while in terms it does not speak of the improvement of the harbor of Boston, authorizes the improvement, filling, and sale of the Commonwealth's flats, requires a plan to be prepared, to be approved by the Governor and Council, setting forth what portions of these lands, when reclaimed, shall be devoted to railroad or commercial purposes, and what to general purposes.

Apparently the statute we are immediately considering was rendered necessary by the reluctance of other owners of flats to sell their property, or to join in the proposed improvement. The message of his Excellency the Governor to the Legislature in 1869, which has been made a part of the agreed facts, is relied on by the plaintiffs to maintain their contention that the project which the Commonwealth entered into, and by reason of which their land was taken, was a mere land speculation. But while this message, as do the statutes referred to, contemplates that portions of the land reclaimed may be sold to advantage, it also urges that their reclamation will benefit the harbor of Bos-

ton, as well as provide important public accommodation. That the improvement of Boston Harbor is an object of a public nature, and thus that lands taken for this purpose are taken for a public use, can hardly be controverted. It is not necessary that the entire community should directly enjoy or participate in an improvement or enterprise, in order to constitute a public use; and a benefit to the principal harbor of the Commonwealth is much more than a local advantage. Nor when we consider that acts of incorporation have been granted, and fully recognized as constitutional, which authorized the taking of private property for the purpose of carrying forward enterprises such as the construction of railroads, or others which tend to the prosperity and welfare of large portions of the community, should we be willing to say, even if no improvement of Boston Harbor formed a part of the purpose, that the Legislature might not properly provide for the reclamation of a large body of lands, such as flats, substantially useless in their original condition, for railroad and commercial purposes, by taking, subject to proper compensation, such of them as were necessary for the accomplishment of the object. *Boston & Roxbury Mill Co.* v. *Newman*, 12 Pick. 467. *Talbot* v. *Hudson*, 16 Gray, 417. *Bancroft* v. *Cambridge*, 126 Mass. 438.

The plaintiffs offer no evidence that the declared purposes of the statute, or those fairly to be inferred from it, were not its real purposes. Even if it be true that the Commonwealth, as the result of the enterprise, expects to sell its lands to advantage, many enterprises of great public utility are of advantage to individuals. *Boston & Roxbury Mill Co.* v. *Newman*, 12 Pick. 467. *Talbot* v. *Hudson*, 16 Gray, 417. If lands are taken for a public use and for the benefit of the community, it is not of importance that individuals, or, as in this case, the Commonwealth, may derive incidental advantage therefrom.

The cases cited by the plaintiffs to the proposition, that, if a private use is combined with a public use in such a way that the two cannot be separated, lands thus taken cannot be said to be taken for a public use, do not affect the case at bar. No land is here taken for a private use, although an incidental and private advantage may arise from such taking for a public use.

*Bill dismissed.*