DYER et al. v. MAYOR, ETC., OF CITY OF BALTIMORE et al.

(Circuit Court, D. Maryland. June 26, 1905.)

No. 31.

1. MUNICIPAL CORPORATIONS—BUILDING WHARVES AND DOCKS—LEGISLATIVE GRANT OF POWER.

A legislative grant of power to a city "to lay out additions and alterations to be made to the public wharves and docks" of the city, made after the existing buildings and structures along the water front had been destroyed by fire, is not to be so narrowly construed as to limit it to the building of additions to existing wharves and docks, but includes power to enlarge the facilities of the port by making new ones, and especially where, from the known insufficiency and inadequacy of the previous structures for the purposes of modern commerce, it is evident that such was the legislative intent.

2. EMINENT DOMAIN—LEGALITY OF GRANT OF POWER—PUBLIC CHARACTER OF USE.

A grant of power to a city to condemn property for use in constructing wharves and docks in accordance with a comprehensive plan to be adopted by the municipal bodies designated is not invalid, as authorizing the taking of property for other than public uses, because some of the piers and docks may not be at once required for strictly public uses, and may be leased by the city to private parties to be used for purposes of navigation and commerce, where, under the city's charter, its title is inalienable, and special rights can only be granted for a limited time and subject to the power of regulation.

[Ed. Note.—For cases in point, see vol. 18, Cent. Dig. Eminent Domain, §§ 54, 71.]

3. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—EXERCISE OF POWER OF EMINENT DOMAIN—PROCEEDINGS FOR ASSESSMENT OF DAMAGES.

Proceedings for the condemnation of property by a city for public use are not invalid, as taking property without due process of law, because under the statute the assessment of damages is made by a commission appointed by the mayor to have charge of the making of the contemplated public improvements, nor because, in case of appeal from the award of damages, the judge is given discretionary power in regard to the taxing of costs.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional Law, § 880.]

4. EMINENT DOMAIN—ASSESSMENT OF DAMAGES—NOTICE TO PROPERTY OWNERS
   —REASONABLENESS.

Where the portion of a city adjacent to the harbor was destroyed by
fire, and it was a matter of common knowledge that the city was pro-
ceeding to acquire property in the burnt district by condemnation for
harbor and dock purposes, provisions of the statute requiring two weeks'
notice by publication of the meeting of the commission to assess damages
to property owners after the plans for the improvement were adopted,
four days' notice of the time set for reviewing the assessment after it
was made, and two weeks' notice of the right to appeal, which continued
for fifteen days, are reasonable with respect to the length of notice, and
do not violate the constitutional rights of a property owner.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Constitutional
Law, § 880, vol. 18 Cent. Dig. Eminent Domain, §§ 489, 490.]

In Equity. Suit for injunction. On demurrer to bill.

Arthur W. Machen and Arthur W. Machen, Jr., for complainants.
W. Cabell Bruce and Edgar Allen Poe, for defendants.

MORRIS, District Judge. Mrs. Dyer is the owner of property with-
in the burnt district proposed to be taken by the city of Baltimore for
the additions and extensions to be made to the public wharves and docks
and to the basin and harbor of Baltimore, under and by virtue of the
act of the Legislature of 1904, approved March 11, 1904 (Laws 1904, p.
141, c. 87), known as the "Burnt District Act." This is a bill of com-
plaint filed by Mrs. Dyer and her husband, who are citizens of New
York, against the mayor and city council of Baltimore, E. Clay Tim-
anus, mayor of the city, and against the members of the burnt district
commission of Baltimore City, asking an injunction to restrain the de-
fendants from proceeding to condemn Mrs. Dyer's property, and from
filling up the private docks appurtenant thereto, and from taking posses-
sion of said property under color of any condemnation proceedings.

The grounds upon which an injunction is prayed are: First. That
the scheme of new wharves and docks provided for by City Ordi-
nance No. 149, and the map accompanying it, are upon its face beyond
the powers of the burnt district commission granted to it by the act
of 1904 (Laws 1904, p. 141, c. 87), because the proposed wharves and
docks are not either additions or extensions to the old wharves and
docks. Second. That the city is contemplating a fraud upon the burnt
district act, inasmuch as the act authorizes additions and extensions to
public wharves and docks, while the city, under color of the power so
conferred, is really intending to construct wharves which will not be
public wharves, but will be leased to private individuals and corpora-
tions for their exclusive use, and the attempt to condemn is really for
a private and not a public use, in violation of the Constitution of the
United States and of Maryland. Third. That the machinery of con-
demnation provided in the act of 1904 (Laws 1904, p. 141, c. 87) does
not afford the landowner due process of law, because the burnt district
commission, which is directed to value the property taken, is an agent of
the city and not an impartial tribunal; and, further, that the notices pro-
vided by the act are not reasonable, in that they do not give sufficient
time to enable the landowner to avail of the right of appeal to a jury;
and, further, that in case of an appeal and jury trial the costs are to be

in the discretion of the trial court. The city of Baltimore has demurred to the bill of complaint, and it is upon the sufficiency of the bill that the court has now to pass.

The act of 1904 (Laws 1904, p. 141, c. 87) is entitled "An act to create a commission on the burnt district of Baltimore City, to define its duties and powers; to regulate its methods of procedure; to define the extent of said district; to provide for opening, extending, widening, straightening and closing streets, lanes and alleys; for establishing public squares and market places, building lines and the width of sidewalks in said district; for adding to, extending and partly filling the harbor and basin of Baltimore City, and for establishing public wharves and docks; and to provide for appropriating a portion of the general sinking fund of Baltimore City and other money for the purposes of this act." By a subsequent act of the same Legislature (Laws 1904, p. 767, c. 444), it was provided that, for the purpose of carrying into execution the plan of the improvements to be adopted under the foregoing act, there should be submitted to the voters of Baltimore an ordinance authorizing a loan of $6,000,000. The above-mentioned act of 1904 (Laws 1904, p. 141, c. 87) authorized the mayor of Baltimore to appoint four capable and upright citizens, who, with the mayor, ex officio, should constitute "the Burnt District Commission," but that no municipal officer of the city, whether holding a paid or unpaid place under the corporation, should be eligible, and that, if in any particular case any commissioner should be interested, the mayor should make a temporary appointment to act in his place. The powers and duties of the commission are enumerated in sections 2 and 3 as follows:

"Sec. 2. And be it enacted that said commission shall have the following powers and be charged with the following duties: (1) To lay out, open, extend, widen, straighten or close any street, lane or alley, or any part therefor in said burnt district. (2) To establish and fix the building line and the width of the sidewalks of any street, lane or alley now existing or to be laid out, opened, extended, widened or straightened in said burnt district. (3) To open public squares and market spaces in said burnt district, and to lay out additions and extensions to be made to the public wharves and docks of Baltimore City and to be made to the basin or harbor of the city of Baltimore, and to acquire in the name of the mayor and city council of Baltimore the land and the property within said burnt district which may be requisite to make such additions and extensions and to define the extent to which said harbor or basin is to be filled in in said burnt district. And said commission shall have all powers necessary and proper to exercise said powers.

"Sec. 3. And be it enacted, that in executing the powers conferred on said commission by section 2 of this act and in making the changes, additions and improvements set out in any report or reports and map or maps approved as provided in this act, the said commission shall have such powers in addition to those herein granted as may be conferred upon it by any lawful ordinance or ordinances of the mayor and city council of Baltimore which ordinance or ordinances the mayor and city council is hereby fully authorized to adopt; provided no such ordinance or ordinances shall deprive said commission of any powers conferred on it by this act."

By section 30 the boundaries of the burnt district are defined, including within its limits all of the wharves, docks, harbor, and basin west of the east side of Jones Falls, and comprising within its area the property of the complainant. The act by other sections provides how the commission shall proceed. For the purposes of the present case, and now

reciting only the proceedings which have reference to the wharves and docks and harbor, it is sufficient to state that the act directs that the commission shall prepare maps of the burnt district and lay down thereon "(4) the additions and extensions which it proposes to make to the public wharves and docks and to the basin or harbor of the city of Baltimore within the territory covered by said map or maps, or any one or more of said changes, additions or improvements." The commission is directed to make a detailed report, accompanied by said map or maps, to the board of estimates and board of public improvements, which as a joint body may approve or disapprove and suggest changes and modifications thereof; and the plans and reports and maps, when approved, are to be submitted to the city council, and, when approved by an ordinance or resolution of the mayor and city council, the commission shall immediately proceed "(4) to provide for such additions or extensions to the basin or harbor of the city of Baltimore and to the public wharves and docks as all of said changes, additions and improvements are shown on or by said report or reports or said map or maps which have been so approved by ordinance or resolution of the mayor and city council of Baltimore, and for which appropriations have been made as aforesaid, and said commission shall promptly lay down or locate all such changes, additions or improvements. And the said commission, in order to accomplish the work, shall promptly proceed to acquire in the name of the mayor and city council of Baltimore and by the methods in this act provided, such lands, interests, rights, franchises, privileges or easements as may be requisite * * * to make such additions and extensions to the public wharves and docks and to the harbor of Baltimore."

"Sec. 5. And be it enacted that the mayor and city council of Baltimore, acting by and through the agency of said burnt district commission, may acquire by gift, purchase, lease, whatever the duration of the lease, or by other methods of acquisition, or by condemnation, any private property, rights or interests, franchises, privileges or easements that may be required * * * to make any additions to the basin or harbor or to the public wharves or docks, as shown by said report or additional or amended report and map or maps accompanying or which may be required in the execution of the powers and the performance of the duties vested or imposed on said commission by this act."

By section 7 it is enacted that, when resort is had to condemnation "in making any additions or extensions to the basin or harbor or public wharves and docks," the proceedings may be such as may be provided for the very purpose by lawful ordinance or ordinances of said mayor and city council which it is hereby authorized to adopt, "provided that provision is made therein for reasonable notice to the person or persons in whose favor such damages are to be assessed or against whom such benefits are to be assessed, and provided that provision be made for appeals to the Baltimore city court, including the right to appeal to the Court of Appeals by any person or persons interested, including the mayor and city council of Baltimore, from the decision of said commission in valuing or finding said damages; or such proceedings or course of procedure may at the option of the commission be that hereinafter by this act provided."

By section 8 it is provided that when the plans for any additions

to the basin or harbor or extension to any public wharves or docks in said burnt district shall have been approved by the mayor and city council of Baltimore, and appropriations made, the commission having given at least two weeks' notice of the meeting of the commission by advertisement in two daily newspapers published in Baltimore of the time and place of meeting, and of any additions or extensions it proposes to make to the harbor or basin or to the public wharves and docks of Baltimore, and of the dimensions or extent of the additions or extensions it proposes to make, the commission shall meet at the time and place mentioned, and from time to time thereafter, and shall ascertain the damage in value which will be caused to the owner of any ground for which the owner ought to be compensated, but no apportionment of benefits shall be made in the case of addition to the basin or harbor or to the public wharves or docks, but the city shall pay all damages, purchase price, and expenses assessed for, or agreed upon, or arising from, such additions or extensions.

By section 10 it is enacted that, as soon as the commission has completed the valuation of the damages, it shall make a statement thereof for the inspection of all parties desiring information, with a map containing a description of each lot, and the name of the person supposed to have an estate or interest therein, and the amount of damage as valued by the commission, and shall publish a notice for four successive days in two daily newspapers of the city, giving notice of the extent of the ground covered by the assessments, and that such statements and maps are ready for inspection, and that the commission will meet on a day to be named in said notice for the purpose of reviewing any matters to which persons claiming to be interested shall make objection, and shall hear and consider all representations, either verbal or in writing, offered to it on behalf of any person claiming to be interested, and shall make such corrections and alterations in the valuation, assessments, and estimates as to a majority of the members shall appear just and proper. They are directed, upon closing such review and having made such corrections as they shall deem proper, to deposit the books and proceedings, statements and maps, as finally corrected, in the office of the city register, who is directed to give notice to all persons interested that said assessments and maps have been placed in his office by a notice published in two daily newspapers in the city twice a week for two successive weeks, and notifying the parties affected thereby that they are entitled to appeal therefrom by petition in writing to the Baltimore city court.

By section 11 it is made the duty of the commission to serve written or printed notices upon every one to whom benefits are assessed or damages are awarded, but the service of said notices is not to be construed as a prerequisite.

By section 12 it is enacted that every one who is thus affected may, within 15 days after the corrected proceedings are placed in the city register's office, and within 15 days of the first publication of notice thereof, appeal to the Baltimore city court with the right to a jury trial, with right, also, of appeal to the Court of Appeals; and the judge of the Baltimore city court is empowered to require the costs or any part there-

of to be paid as part of the damages to be paid to the city, or to be paid by the appellants, as the circumstances of the appeal may in his opinion justify.

1. The first contention of the complainants is that the power given by the foregoing act is not a sufficient authority to enable the city to change the old private wharves and docks and to condemn the property appertaining thereto which is required to make the new wharves and docks contemplated by the plans and maps adopted by the city. It is contended that the words "to lay out additions and alterations to the public wharves and docks of Baltimore City" mean that there must be in existence a public wharf or dock, and that all that the commission is given power to do is to make an addition or extension to the physical structure of that existing public wharf or dock. Looking to the actual situation to which it was obviously the intention of the Legislature that the burnt district act should be applied, this seems too limited a meaning to give to the words. To add to or extend the public wharves and docks of a port does not necessarily import a dealing with existing structures. Power is very frequently given to a municipality by the Legislature to enable it to fulfill the public duty of providing sufficient docks and wharves for its commerce. To add to its wharves and docks may well mean in a comprehensive act, such as the one in question, to make new ones; to extend its wharves and docks may well mean to carry the system into new areas; and to make additions and extensions to the harbor or basin may well mean in such an act the widening of the docks appurtenant to the basin, in order to give more room to enable vessels of the size which use the port to more safely navigate. When it has the legislative grant of the power, a public duty devolves upon the municipality to develop the utility of its harbor. To provide docks and wharves is a purpose for which private property may be taken, as for a public use.

It is a well-known fact that for years before the great fire of February 7 and 8, 1904, the old docks and wharves which in former generations had been extended south from Pratt street between Light street and Jones Falls had in a great measure ceased to be useful. The warehouses built on the wharves were not in demand, and had generally declined in value. Numbers of them were at times vacant, or could obtain tenants only at greatly reduced rents. The docks were so shallow and so narrow that vessels of modern construction could not enter them. It was a problem often discussed as to what use the property could be put to rescue it from dilapidation, and how the docks could be improved and the harbor enlarged, so as to furnish facilities to the vessels coming to the inner basin of the port. With the great fire which swept over the whole area, containing some 50 acres, leaving no warehouses standing, the great opportunity to solve the situation was offered, and it was to avail of this opportunity that the burnt district act, so far as it relates to the harbor, docks, and wharves, was enacted, and that the carefully worked out plans of the commission were approved by Ordinance 149 of the mayor and city council. These matters were of such general notoriety and public discussion that it is fair to say that every one had knowledge of them, and no court interpreting the burnt district act should shut its eyes to them. The time and the opportunity had

come when the city could, without too great a cost, assume the duty of furnishing reasonable and modern wharves and harbor facilities for the commerce of the port, and it was in the face of this opportunity that the Legislature enacted the burnt district act, which by its title recites that it is intended to provide "for adding to, extending and partly filling the harbor and basin of Baltimore City and for establishing public wharves and docks." So careful was the Legislature that any plan which might be matured by the burnt district commission and approved by the board of estimates and the board of public improvements and sanctioned by an ordinance of the mayor and city council should not be defeated by any supposed defect in the authority conferred on the burnt district commission that, as hereinbefore recited, it provided by section 3 that in addition to the powers conferred by section 2 the commission should have such powers as might be granted to it by any ordinance of the city, and gave to the city the authority to pass such an ordinance.

The burnt district act was special legislation, enacted at a crisis in the history of the city; and, looking to the whole situation and to the purposes which the act outlines, it seems to me that the power to lay out additions and extensions to be made to the public wharves and docks and to the basin and harbor was not restricted to merely adding to some public wharf already existing, but covered the adding to and extending the public wharf facilities by such a plan as would make the public wharves and docks more suitable to the requirements of the commerce of the city. As far as concerns making additions and extensions to the basin or harbor, all the increased area of water not covered by the proposed new piers will be open, navigable water enlarging the basin or harbor. I cannot consider the first ground of objection to the power of the commission well taken.

2. The complainant's second contention is that the city is about to proceed to condemn the complainant's property, not really for the purpose of establishing public wharves and docks, but is intending to construct piers which it proposes to lease to private individuals and corporations for their exclusive use, so that the condemnation will not really be for a public use. The city can only act through ordinances passed by the mayor and city council, and no ordinance giving authority to make such a lease has been passed. The complainant relies upon an advertisement signed by the city comptroller, inviting applications from persons, firms, or corporations desiring exclusive rights in the proposed new city docks and piers. So far as appears, this invitation is without lawful authority, and commits the city to nothing. By section 8 of the city charter it is provided that special rights in any public property can only be granted for a limited time by an ordinance duly passed, and with safeguards retaining the power of the city to regulate such right or franchise. It would be strange if the court could declare the act of the Legislature unconstitutional and the proceedings of the burnt district commission void because of this advertisement. It is no doubt probable that the requirements for strictly public wharves may not exhaust all the piers and docks which it will be necessary to construct in carrying out the beneficial changes contemplated by the plan of the burnt district commission, and that there may be space which the city

can only utilize by leasing it; but it would not follow that the improvement as a whole was not for a public use which it was the duty of the city as a municipality to see carried out.  Regard must be had to the methods by which the public wharves of a city are availed of in modern commerce.  · Public landings on a river bank open to every vessel that chooses to make fast to it are not suitable to every kind of modern transportation by water.  In a case in which by an act of the Legislature of New York there was granted to the city of New York the power to condemn property in order to erect a great number of piers according to a general plan for improving its water front, and the act gave power to the city to lease certain of the piers for special uses, it was held that the act was a valid exercise of the right of eminent domain.  In City of New York v. N. Y. Central & Hudson River R. R., 135 N. Y. 253, 31 N. E. 1043, 31 Am. St. Rep. 825, Mr. Justice Peckham, speaking for the Court of Appeals of New York, holds that:

"Land which is thus taken is taken for a public use, although some portion of all the land actually used may thereafter, in the discretion of the city, be divided off and placed in the exclusive possession of a lessee for the sole purpose of using it in the transaction of the necessary business connected with the loading and unloading of passengers and cargoes of ships and steamers."

It is alleged in the bill of complaint that it is the purpose of the defendants in their plan or scheme that the mayor and city council shall farm out much the larger portion of the lands to be acquired, including the complainant's land, and take to itself the rentals to be secured.  But the only fact to support this allegation which is mentioned is the advertisement above referred to.  It does not seem to me that the apprehension by the complainant that the city might divert the property when acquired from a strictly public use is sufficient ground to declare the proceeding void.  That there can be no permanent diversion is settled by the city charter, which provides that the title of the city to its water front, wharf property, docks, shall be inalienable.

3. It is claimed that the procedure for assessment of damages is not valid, because the assessment is not made by an impartial commission. I fail to see how the burnt district commission differs from any board of public officers charged with the duty of ascertaining the value of property required for a public use.  They are public officers charged with public duties, and a special provision is made for a temporary appointment in case any of them in respect to any particular parcel of land shall not be free from interest.  The same question was raised in Bass v. City of Fort Wayne, 121 Ind. 389, 23 N. E. 259, and it was held by the Supreme Court of Indiana to be a valid exercise of the right of eminent domain.

It is further contended that the notices of the several steps of the proceeding· are insufficient to afford due process of law.  The notices and proceedings of condemnation are substantially the same as have, in the case of the commissioners for opening streets in Baltimore City, stood the test of half a century of litigation, and the authority given to the judge with regard to the costs in case of appeal is the same.  It is provided that after the plans have been approved by an ordinance two weeks' notice in two daily papers shall be given of the meeting of

the commission to ascertain the damages. When the assessment of damages is made, four days' notice in two daily papers is to be given of the time when the commission will sit to hear parties making objections. Upon closing this review the report and plats are deposited in the register's office, and a notice is to be published in two daily newspapers that the parties dissatisfied are entitled within 15 days to an appeal with right to a jury trial. In the case of an ordinary street opening, no notice is given of the meeting to ascertain and assess the damages, but after the damages have been assessed the same period of four days' notice is given of the sitting to review, and the notice from the city register is that four weeks, instead of two weeks, are given in which to appeal. It seems to me that it cannot be successfully maintained that the notices do not afford sufficient time for a party interested to avail of the opportunities given for review and for appeal.

It is to be considered that these notices do not have reference to an isolated and unexpected condemnation. Every owner of property in the district must have been aware that the whole area was laid waste by the fire. Every owner or agent competent at all to look after the interest of a property owner in the district must have had knowledge that the plans for acquiring the property for harbor and dock purposes. were being proceeded with. The most careless owner could not remain without knowledge that it was necessary to be observant of the published notices and proceedings of the commission, and I fail to see how under the circumstances it can be successfully contended that the notices were so ineffectual as to invalidate the proceedings.

In considering condemnation proceedings it was well said by Mr. Justice Bradley in Boyd v. The United States, 116 U. S. 616, 635, 6 Sup. Ct. 524, 535, 29 L. Ed. 746:

"It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon."

But, notwithstanding the able presentation of the case of the complainant by her learned counsel, I have found nothing that calls for interference by injunction. It seems to me that the use for which complainant's property is to be taken is a public use; that the notices, the method of assessment, and of trial by jury on appeal are such as to insure to her just compensation; and that no constitutional right in which she is entitled to the protection of the court has been violated.

The demurrer is sustained.