OPINION TO THE GOVERNOR.

JANUARY 19, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

OPINION TO THE GOVERNOR relative to "Newport Development Authority" upon request therefor in accordance with provisions of section 2 of article XII of amendments to constitution of Rhode Island.

January 19, 1950

To His Excellency John O. Pastore,
   Governor of the State of Rhode Island
      and Providence Plantations.

We have received from your excellency a request for our written opinion, in accordance with the provisions of section 2 of article XII of amendments to the constitution of this state, upon the following question:

"Do the establishment and operation of a 'marina' and an 'auditorium' as defined in Section 2, Chapter 1924 of the Public Laws of 1947 entitled 'An Act Creating a Newport Development Authority', approved June 3, 1947, constitute public purposes for which public money may be spent, private property may be taken by condemnation, public debt may be incurred and taxes may be levied within the fundamental principle of constitutional law that those things may be done only for public purposes and not for private purposes?"

By public laws 1947, chapter 1924, the general assembly created "a body corporate and politic" to be known as the "Newport development authority" which is to be an instrumentality of the city of Newport in relation to the carrying out of certain projects, so called, and the exercise of the powers conferred by the act upon that authority is deemed to be an essential governmental function of the city. The authority under sec. 3 of the act is authorized and empowered, among other things, to "construct, maintain, manage, supervise, lease and operate the 'projects', or either or both of them, as the authority selects, so that they shall be self liquidating." In a previous section of the act the first project is called a "Marina" and is defined as "a yacht basin or pier or piers or a combination thereof, located in the city of Newport, or waters adjacent thereto, with appropriate facilities for servicing yachts and pleasure boats of all types, including sail and power boats * * *"; and the second project is called an "auditorium" and is defined as

"a hall or other building located in the city of Newport, appropriate for the holding of international, national, state and local conventions, basketball and other tournaments, musical and other performances, and other business, social and recreational events." The general purpose of the act is set forth in sec. 11 in the following language: "The exercise of the powers granted by this act will be in all respects for the benefit of the city of Newport, for the increase of its commerce and prosperity and for the improvement of its health and living conditions * * *."

The authority is also given power under secs. 3 and 4 of the act to acquire by purchase or otherwise, on such terms and conditions and in such manner as it may deem proper, or by the exercise of the right of condemnation, such public or private lands or parts thereof or rights therein, subject to certain specific provisions and exceptions, as it may deem necessary for or incidental to carrying out the provisions of the act. Under sec. 18 the act, which also includes provisions relating to the financing of the projects and the issuing of bonds, was submitted to the voters of Newport and was thereafter approved by them. In addition sec. 16 sets out that the provisions of the act are severable and if any portion thereof is unconstitutional the remaining provisions shall not be affected or impaired.

The question upon which we are asked to give our advisory opinion is narrow. Briefly it is whether the projects above referred to constitute public purposes in the constitutional sense. The question is of importance since it is evidently contemplated that it may become necessary to condemn private property, expend public money, incur public debt, and levy taxes in establishing and operating such projects.

Recently in advisory opinions dealing with the constitutionality of the Community Redevelopment Act, so called, we have had occasion to discuss at some length the definitions and meanings which have been given to the terms "public purpose" and "public use," the tests which courts

have applied in determining whether a purpose or use is public, and the weight to be accorded to a legislative finding that a contemplated use is public. At this time we see no reason for repeating or enlarging upon our views as there expressed. Further we have in mind and have applied the well-established rules which govern when we give an opinion respecting the constitutionality of an act of the general assembly. One of those rules is that before declaring such an act unconstitutional we must be satisfied of that fact beyond a reasonable doubt. See *Opinion to the Governor,* 76 R. I. 249.

The act now before us involves the establishment and operation in the city of Newport of two projects, namely, a marina and an auditorium, as defined therein. We are of the opinion that it will be in the interest of clarity to deal with these projects separately in determining whether their establishment and operation constitute public purposes. Therefore we shall first discuss the marina. After careful consideration it is our opinion, speaking generally, that the establishment and proper operation of the marina as we interpret it constitute a public purpose. Reported cases involving the establishment and maintenance of yacht basins are apparently not numerous and the following are examples of such cases as have come to our attention: *Gilbert* v. *City of Traverse City,* 267 Mich. 257; *State* v. *City of Clearwater,* 135 Fla. 148; *Nelson* v. *DeLong,* 213 Minn. 425. Although the precise issue now before us was apparently not directly raised or discussed in those opinions, the validity of the respective statutes which were questioned was upheld.

It seems to be well settled that ordinarily the development by a city of its harbor, including the building of docks and wharves, is a project in the public interest and constitutes a public use or purpose. The promotion of service to the public is considered to be the primary object of such a development. In 1 Dillon Municipal Corp. (5th ed.) 506, §269, the following language appears: "The *con-*

*struction of docks and wharves by a municipality for general public use is a public purpose* which justifies the exercise of the power of eminent domain." See also 53 A.L.R. 20. In *Marchant* v. *Mayor and City Council of Baltimore,* 146 Md. 513, *Matter of Mayor, Etc., of City of New York,* 135 N. Y. 253, *Moore* v. *Sanford,* 151 Mass. 285, and *Dyer* v. *Mayor, Etc., of City of Baltimore,* 140 Fed. 880, the above general principles of law respecting harbor improvements were approved and applied in finding the use or purpose then under consideration to be public and in holding the legislative acts to be constitutional.

All the above cases except the *Moore* case related to the construction of docks and wharves primarily for the better handling and growth of the commerce of the ports there under consideration and for ministering to the necessities of such commerce by providing fit places with all proper facilities where ships could be loaded and unloaded. While P. L. 1947, chap. 1924, does not use the specific term "aiding commerce" in the precise application that was involved in those cases, nevertheless, apart from the question of leasing to private persons, its language in our judgment brings it within the general basic principles of law relating to public use or purpose as applied in those cases.

In relation to the project of the marina the act before us is fairly comprehensive in scope. With reference to its purpose and to the city of Newport the act specifically refers therein to the "increase of its commerce," as well as to "the improvement of its health and living conditions," and clearly applies to all of a certain class without discrimination by providing that there be set up appropriate facilities for servicing yachts and pleasure boats of all types. Moreover, the act in effect deals primarily with an additional facility in the development of Newport harbor by the establishment therein of a yacht basin and if necessary the construction of a pier or piers in connection therewith. In our opinion such provisions clearly have for one of their chief objects the providing of a safe and convenient place

for the anchorage and docking of yachts and pleasure boats, thereby in particular aiding in the regulation and control of harbor traffic, which is increased from time to time by the presence of numerous government vessels.

In one aspect a harbor is merely a highway upon which waterbound traffic moves and it may often become necessary to regulate and control that traffic in the interest of public safety and welfare. By providing a suitable basin for yachts and other pleasure boats, such craft are prevented from obstructing the channels of the harbor commonly used by fishing, commercial and government boats, thus aiding in the regulation and control of harbor traffic generally and facilitating the anchorage and docking of boats and vessels of different kinds. In our opinion the regulation and control of harbor traffic by the establishment and proper operation of a marina as defined in chap. 1924, as we interpret it, is as clearly a public use and purpose, though of a somewhat different type, as is the construction of docks and wharves by a municipality in aid of commerce. In both instances the promotion of the public interest and service is primarily sought. Therefore the principles of law, as set out in the cases last cited, in so far as they relate to the existence of a public use or purpose, would also apply here.

However, before the question in relation to the marina is finally decided there remains for consideration a point which is raised by a provision contained in sec. 3 (e) of chap. 1924. By that subsection the Newport development authority is empowered, among other things, to "lease" the marina so that it shall be self-liquidating. The power thus granted, not being otherwise defined or limited, in our opinion gives the development authority in effect absolute power to lease the entire project. So construed it is our judgment that the portion of the act relating to the leasing of the marina is invalid and unconstitutional, since in substance it would permit the spending of public money and the exercise of the right of eminent domain to acquire

private property ostensibly for a public purpose but actually for profit in the operation of the marina as a private enterprise. However, the act contains a severability clause, as we have indicated, and the above power to lease the marina, like any other provision that may be found to infringe upon proper constitutional limitations and safeguards, may be severed from the said subsection of the act leaving the remainder thereof unaffected and unimpaired.

We are of the opinion that it was the plain intention of the general assembly that the marina or yacht basin was to be constructed and *operated* by the development authority as a public enterprise. To permit such authority to lease the entire project to some private person, who thereafter would operate it for his own profit by fixing the fees and charges for its use and for services rendered, without regulation in the public interest as a public utility, would at once make it a private enterprise and would remove the element of primary public use or purpose which is essential if the act by which the project is authorized is to be considered valid. The actual control in the operation of the project should be in the development authority, since the object to be attained is the construction and *operation* of the marina by such authority for the use of the public generally.

We realize that several of the cases hereinbefore cited permitted, under provisions of acts then being considered, the public authority there involved to lease certain entire docks and wharves to specific steamship companies for the better control, management and aid of commerce in the public interest. The reasons for such holdings are set out fully in the *Marchant* case and in the *Matter of Mayor, Etc., of City of New York, supra.*. Whatever may be said of such cases, it is clear to us that the leasing of the facility to a steamship company for its own use but in aid of general commerce and the public welfare is clearly distinguishable from a leasing of the facility here to private persons to be operated for private purposes and profit, as might be done

under the statute here involved. On that issue it is our opinion that the cited cases have no application here.

In regard to the "auditorium" the act defines that project as previously quoted in this opinion. Certain of the uses therein stated, if considered separately as the primary purpose of the project, would not of themselves constitute a public use or purpose authorized by the constitutional provisions here involved. But there are other provisions in the act in the nature of findings which indicate the meaning of such uses and should be read together with the definition. When the act is thus read as a whole, it appears to us that the uses enumerated in the definition were intended to be affected with a public interest and to be applied only so far as they are incidental and reasonably related to some essential function of government in providing a use or service to the public generally under proper safeguards and regulations. In other words, we understand such definition to mean, and we so construe it, that the auditorium is to be used primarily for the holding of assemblies of the citizens of the city in the performance or the promoting of some essential business or function of the government, and only incidentally for such conventions, tournaments, performances and other business, social and recreational events as may reasonably contribute to the public use, service or welfare of the people of the state.

In 19 R. C. L. 722, §29, the following statement appears: "So, too, the erection of an auditorium has been regarded as properly falling within the purposes for which a municipal corporation may provide." There are many cases dealing with the erection and operation of an auditorium by a municipality or a municipal authority and they hold generally that such erection and operation is proper and constitutional as being for a public purpose. The following are examples of such cases. *Adams* v. *City of Durham,* 189 N. C. 232; *City and County of Denver* v. *Hallett,* 34 Colo. 393; *Wheelock* v. *City of Lowell,* 196 Mass. 220; *Halbruegger* v. *City of St. Louis,* 302 Mo. 573. The purposes

and uses set out in the acts providing for the erection of such auditoriums are broad and varied and no useful end would be served by repeating them in detail. In general the purposes and uses appearing in the act before us follow the same general pattern. After consideration it is our opinion, broadly speaking, that the establishment and operation of an auditorium, as defined in chap. 1924 and as above interpreted and construed by us, constitute a public purpose.

In passing upon the above act as interpreted there are certain special limitations which we feel called upon to place upon it. What we have already stated in regard to the leasing by the development authority of the marina in its entirety applies with equal force to a similar leasing of the auditorium. That building is to be primarily public in nature and for the use of the public. Furthermore its operation and control, under reasonable regulations designed to effectuate its public purpose, must at all times remain in the development authority and not be delegated to any private person.

However, when other public requirements do not conflict the auditorium may be rented by the development authority, under proper safeguards in protection of the public interest, for short periods for the uses indicated in the act. Since it is a public building it is not proper that it be used for private purposes free of charge. Also neither the municipality nor the development authority should carry on or permit to be carried on any private business therein except such as may be merely incidental to its use by the public and for their welfare.

To sum up, the auditorium must be devoted primarily to a use by or service to the public and not to any private use, unless the latter be merely incidental and reasonably related to the proper public use and be productive of revenue for the public. Furthermore, no private use is proper which may be detrimental to the primary public use, and any proper party in interest is entitled to question,

in the appropriate forum, an alleged improper use of the auditorium.

Therefore, construing public laws 1947, chapter 1924, as hereinbefore set forth and placing thereon limitations of the character above referred to, we answer the narrow question submitted to us in the affirmative as to both the marina and the auditorium.

> Edmund W. Flynn
> Antonio A. Capotosto
> Hugh B. Baker
> Francis B. Condon
> Jeremiah E. O'Connell