Robert L. FRUM, Virginia Frum and Lefty's Coho Landing, Inc., Defendants–Appellants,

v.

LITTLE CALUMET RIVER BASIN DEVELOPMENT COMMISSION, Plaintiff–Appellee.

No. 64A03–8611–CV–312.

Court of Appeals of Indiana, Third District.

Jan. 28, 1988.

Thomas W. Webber, Sr., William S. Suarez, Portage, for defendants-appellants.

Louis M. Casale, Merrillville, Michael C. Harris, Chesterton, for plaintiff-appellee.

GARRARD, Presiding Judge.

This is an appeal from a judgment in favor of The Little Calumet River Basin

Development Commission (Commission) in the taking phase of an eminent domain action brought by it to condemn property owned by Robert Frum, Virginia Frum and Lefty's Coho Landing, Inc. (landowners). The landowners raise the following issues on appeal:

1) whether the statute giving the Commission the power of eminent domain is unconstitutional because it gives the Commission the authority to lease taken property to a private party thereby making the use a private rather than a public one; and

2) whether the statute establishing the Commission and its amendment which gives the Commission the authority to take only certain property by eminent domain constitute unconstitutional class legislation which violates the landowners' right to equal protection.

We affirm.

The Little Calumet River Basic Development Commission was established by our legislature in 1980. IC 14–6–29.5–2(a) (1982 and Supp.1986). The Commission was granted the power of eminent domain over certain land and the power to lease improvements made upon that land to private persons. *Id.;* IC 14–6–29.5–5(c) (1982). Due to the deaths of several boaters which occurred at the mouth of Burns Waterway, the Commission requested the federal government to expedite a study which was being conducted of Little Calumet River. The request was granted and a final report was issued in February of 1983. The report recommended that a small boat harbor be constructed which would include a new breakwater and marina. The report indicates that the U.S. Army Corps of Engineers initially explored the possibility of locating the marina south of U.S. Highway 12 either north of the west fork of the Little Calumet River (Burns Ditch) or southwest of the intersection of Little Calumet River and Burns Waterway. (Plaintiffs' Exhibit 11, p. EIS 6 and Plate 3–B–1). Apparently some of the land for these sites was owned by Midwest Steel. (Appellants' Brief, p. 6). The plan, however, was modified and the recommended marina site was located south of U.S. Highway 12 where it intersects with Burns Waterway. (Plaintiffs' Exhibit 11, p. EIS 6 and Plate 3–B–26; R. 187). Lefty's Coho Landing, Inc., a corporation whose president is Robert L. Frum, operates a marina business on this site. (Appellee's Brief, p. 4, R. 187). The federal government approved the plan in December of 1983.

On March 1, 1984, the Indiana legislature approved a bill which amended the statute which had established the Commission and had granted to it the power of eminent domain. 1984 Ind.Acts 94. One effect of the amendment was to except from the power of eminent domain land located north of U.S. Highway 12 and land south of where the Little Calumet River intersects with Burns Waterway. IC 14–6–29.5–2(a) (Supp.1986). Apparently, Midwest Steel owned land in both these parcels.

On March 30, 1984, the Commission signed a contract with the United States of America wherein the federal government agreed to pay for one-half of breakwater construction costs if the Commission, as local sponsor, would pay for the other half of the breakwater construction, acquire and pay for all necessary lands, and pay for the construction of a marina and ancillary facilities. The contract requires that the marina be open to all on equal terms and requires an adequate portion of the marina to be reserved for transient and refuge-seeking craft. The Commission examined several possible marina sites and selected an eighteen acre site located on the east side of Burns Waterway south of U.S. Highway 12. This site includes land owned by the Frums and Lefty's Coho Landing, Inc. The Commission filed a condemnation action and it is from a judgment in favor of the Commission from which those landowners appeal.

■ The landowners initially argue that because Indiana Code § 14–6–29.5 permits the Commission to lease property it has acquired by eminent domain to private parties, their land is being unconstitutionally taken for a private use. While we agree that the taking of private property through

the power of eminent domain for private purposes is unconstitutional, *Fountain Park Co. v. Hensler* (1927), 199 Ind. 95, 155 N.E. 465, the taking in this case is one for a public purpose and the fact that the property may be subsequently leased to a private party does not alter the character of the use.

The construction of ports, marinas, and harbors generally is considered to be a public purpose which justifies the taking of private property under the power of eminent domain.[1] *Orbison v. Welsh* (1962), 242 Ind. 385, 179 N.E.2d 727; *Dyer v. Mayor, etc. of Baltimore* (C.C.1905), 140 F. 880; *Marchant v. Mayor and City Council of Baltimore* (1924), 146 Md. 513, 126 A. 884; *Moore v. Sanford* (1890), 151 Mass. 285, 24 N.E. 323; *In Re Mayor, etc., City of New York* (1892), 135 N.Y. 253, 31 N.E. 1043; *North Carolina State Ports Authority v. First–Citizens Bank & Trust Co.* (1955), 242 N.C. 416, 88 S.E.2d 109; *Port of Umatilla v. Richmond* (1958), 212 Or. 596, 321 P.2d 338; *Opinion to the Governor* (1950), 76 R.I. 365, 70 A.2d 817; *Rudee Inlet Authority v. Bastian* (1966), 206 Va. 906, 147 S.E.2d 131; *City of Des Moines v. Hemenway* (1968), 73 Wash.2d 130, 437 P.2d 171. Furthermore, the vast majority of these authorities hold that the authority to subsequently lease or sell property acquired by eminent domain for port, harbor or marina construction does not convert the nature of the use from a public one to a private one. *Orbison v. Welsh* (1962), 242 Ind. 385, 401, 179 N.E.2d 727, (lease); *Dyer v. Mayor, etc., of City of Baltimore* (C.C.1905), 140 F. 880 (lease); *Marchant v. Mayor and City Council of Baltimore* (1924), 146 Md. 513, 126 A. 884 (lease); *Moore v. Sanford* (1890) 151 Mass. 285, 24 N.E. 323 (sale); *In Re Mayor, etc., City of New York* (1892), 135 N.Y. 253, 31 N.E. 1043 (lease); *North Carolina State Ports Authority v. First–Citizens Bank &*

*Trust Co.* (1955), 242 N.C. 416, 88 S.E.2d 109 (lease); *Port of Umatilla v. Richmond* (1958), 212 Or. 596, 321 P.2d 338 (lease). This court has located only two cases in which the court held the authority to lease property acquired by eminent domain for the purposes of constructing a marina was unconstitutional as constituting a taking for private rather than a public use. *Opinion to the Governor* (1950), 76 R.I. 365, 70 A.2d 817; *Rudee Inlet Authority v. Bastian* (1966), 206 Va. 906, 147 S.E.2d 131. Both of these cases are distinguishable.[2]

In *Opinion to the Governor,* the Rhode Island Supreme Court held that a statute which permitted the condemning agency the power to lease the marina so it would be "self-liquidating," without further restrictions, unconstitutionally permitted the expending of public money for private purposes. 76 R.I. 365, 70 A.2d 817. The court's decision, however, was based upon the fact that the power to lease the marina was not defined or limited so as to require the agency to retain control of the operation by regulating the private lessee. Similarly, in *Rudee Inlet Authority v. Bastian* the Virginia Supreme Court held that a statute, which permitted the condemning authority to lease the entire marina, without stating that the lease was to be in furtherance of the purposes enunciated by the statute, unconstitutionally permitted the authority to take private property for private purposes. 206 Va. 906, 147 S.E.2d 131. The Indiana statute involved in this case specifically states that the "commission may enter into lease agreements ... with private persons ... on such terms and conditions as the commission deems appropriate *and in furtherance of the purposes of this chapter.*" IC 14–6–29.5–6 (1980) (emphasis added). We interpret this language to mean that the Commission does not have the authority to lease land it has

---

**1.** A public purpose exists even though the construction benefits the general public's need for recreation rather than transportation of commercial goods. *See Rudee Inlet Authority v. Bastian* (1966), 206 Va. 906, 147 S.E.2d 131.

**2.** Two Indiana cases cited by the landowners also are distinguishable in that they involved the granting of eminent domain powers to private

individuals who could condemn land for their own purposes rather than a public entity which could condemn land for a public purpose and then lease it to private parties. *See Fountain Park Co. v. Hensler* (1927), 199 Ind. 95, 155 N.E. 465; *Continental Enterprises, Inc. v. Cain* (1979), 180 Ind.App. 106, 387 N.E.2d 86.

acquired by eminent domain where the lease or its terms do not further the purposes of the act. The Commission's limited authority to lease the marina to a private person, therefore, does not convert the use for which the landowners' property was taken from a public to a private one so as to render the statute granting it the power of eminent domain unconstitutional.

The landowners secondly argue that the 1984 amendment to the statute which removed some of the land within the Commission's power of eminent domain constitutes class legislation which violated their constitutional rights.[3] They base this argument on the theory that our legislature arbitrarily and capriciously removed land belonging to Midwest Steel from the Commission's power of eminent domain due to objections which representatives of that company made during hearings prior to the approval of the amendment. This argument is not supported by the record. The only evidence in the record which appears to support the landowners' argument is that representatives of Midwest Steel appeared at legislative hearings on the amendment and voiced some sort of objections. Nothing in the record indicates what objections were made, the basis for them, or that the legislature responded to them. We can not invalidate a statute clothed with the presumption of constitutionality on such evidence. *See Steup v. Indiana Housing Finance Authority, Inc.* (1980), 273 Ind. 72, 402 N.E.2d 1215. Furthermore, it appears that a valid reason existed for excluding land owned by Midwest Steel from the Commission's eminent domain power. As the state must compensate

landowners for land it has taken, Ind. Const. Art. I, § 21, the legislature, as did the Commission and the U.S. Army Corps. of Engineers, may have decided that it would be economically impractical to construct the marina on land developed with operating steel facilities.[4] (R. 51–57). Hence, a rational basis exists for the amendment and it therefore does not violate any of the landowners' constitutional rights.[5] *Id.*

Affirmed.

SHIELDS, P.J., and STATON, J., concur.

---

**3.** As best we can discern, the landowners' argument is based upon an equal protection theory.

**4.** Furthermore, it should be noted that the U.S. Army Corps. of Engineers' report did not select land owned by Midwest Steel in its final recommendation. (Plaintiff's Exhibit 11, p. EIS 6 and Plate 3–B–26). The Commission rejected land owned by Midwest Steel for possible sites for the marina prior to the effective date of the amendment and had selected the present site within a month of the approval of the amendment. (R. 86, Plaintiffs' Exhibit 1, R. 79–80). Those vested with the power of eminent domain are vested with large discretion in determining what property to condemn. *Highland Realty,*

*Inc. v. Indianapolis, Etc.* (1979), 182 Ind.App. 439, 395 N.E.2d 1259. The Commission did not abuse its discretion as its selection was reasonable under the facts and circumstances of this case.

**5.** The landowners' brief failed to contain a statement of the case and failed to cite to relevant portions of the record in support of their arguments. The latter failure not only made this case difficult to review but justified waiver of the entire appeal. Indiana Rules of Procedure, Appellate Rule 8.3(A)(7). Although this court elected to discuss the case on its merits, counsel should be reminded that citations to the parts of the record upon which he relies is necessary.