In the Matter of the Application of the MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, to Acquire Title to Wharf Property, etc., and Lands Under Water between 34th and 35th, 35th and 36th, and 41st and 42d Streets, and 12th and 13th Avenues.

THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY et al., Appellants.

To minister to the necessities of commerce by providing fit and proper places in a seaport where ships can be loaded and unloaded with all proper facilities, is a public duty owing by the state and through it by the municipality which governs and controls the port.

The only standard by which to judge of the extent of the duty is the necessities of the business.

Where a permanent pier and an exclusive right to its use is a necessity of large steamship lines, without which business cannot properly be transacted, the duty rests upon the state or the municipality to provide such accommodations or to permit the companies to obtain them from private owners.

Where this duty has been imposed by the state upon a municipality and it has undertaken its performance, all appropriate acts done by it in such performance are for a public purpose.

Lands therefore required by a municipality, upon which such a duty has been imposed, for the construction of piers and wharves are required for a public use and may be taken under the right of eminent domain, although some portion may thereafter in the discretion of the municipality be divided off and placed in the exclusive possession of a lessee, to be used solely in the transaction of necessary business connected with the transportation of passengers and freight.

Accordingly, *held*, that the provision of the New York Consolidation Act (§ 715, chap. 410, Laws of 1882) authorizing the department of docks to acquire for the benefit of the city title, by proceedings *in invitum*, to any and all wharf property in the city not owned by it included in the plans adopted in pursuance of the provisions of the act of 1870 (Chap. 137, Laws of 1870), as amended by the act of 1871 (Chap. 574, Laws of 1871), is not rendered unconstitutional by the fact that the city is authorized in its discretion to lease its piers or to give the exclusive use of some of them for special kinds of commerce (§ 716).

Also, *held*, that a sufficient grant of power was given by said provision to include in condemnation proceedings property of the nature described, used by a railroad or gas company for landing freight or other property.

It is not necessary in such proceedings to show that the land proposed to be taken is required for the purpose of building any particular pier, dock or bulkhead; if required in order to enable the city to carry out its general plan, the statute permits its acquisition.

While property already devoted to a public use, will not be regarded as subject to the right of condemnation for another public use unless the right is plainly granted by statute, it is not necessary that the statute should so in terms enact, it is sufficient if the right is conferred by necessary implication from the language used.

(Argued June, 7, 1892; decided October 4, 1892.)

APPEALS from orders of the General Term of the Supreme Court in the first judicial department, made April 14, 1892, which affirmed orders of the Special Term appointing commissioners of estimate in a proceeding to acquire title to certain lands in the city of New York.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*Henry H. Anderson* for appellant. The legislature has in the act in question declared uses to which the property may be put when acquired, which are not public and cannot be supported by the exercise of the power of eminent domain.

(§ 716, Con. Act of 1882; *In re N. F. & W. R. R. Co.*, 108 N. Y. 375; *In re U. F. Co.*, 98 id. 3 ; Cooley on Const. Lim. 669; *In re E. B. W. & M. Co.*, 96 N. Y. 42; *Varnum* v. *Martin*, 21 W. V. 534–556; *Wild* v. *Dieg*, 43 Ind. 455–461; *Scholl* v. *G. C. Co.*, 118 Ill. 427; *S. Co.* v. *Brown*, 7 W. V. 199; *W. R. B. Co.* v. *Dix*, 6 How. Pr. 507; Lewis on Em. Domain, § 175.) The property has already been devoted to and is actually occupied for a public use, and cannot be condemned to another public use under the general law of the legislature. (*P. P. R. R. Co.* v. *Williams*, 91 N. Y. 552; *In re B. & A. R. R. Co.*, 53 id. 574; *L. S. & M. S. R. Co.* v. *C. & W. J. R. R. Co.*, 97 Ill. 506; *In re City of Buffalo*, 68 N. Y. 167; *In re N. Y. & B. B. R. R. Co.*, 20 How. Pr. 201.) The condition precedent to this application has never been performed. (*Craig* v. *Town of Andes*, 93 N. Y. 405.) The right to condemn, under this statute, is limited to cases where the necessity for acquirement appears upon the commissioners' map or plan of 1871, approved by the commissioners of the sinking fund. (Laws of 1882, chap. 410, §§ 712–716.) It is plain that the effect of the act is only to transfer the ownership of the property from the appellant to the corporation of New York without changing, so far as the public is concerned, the use at all. It is not taken for a public use. It is appropriated now to the public use in the widest sense. The right to collect the wharfage is largely in private individuals. If taken, the right to collect wharfage will be in the corporation. (*In re E. B. W. & W. Co.*, 96 N. Y. 42.)

*Charles Blandy* for respondent. The negotiation made with the New York Central and Hudson River Railroad Company, and the failure by that corporation to respond to the offer of the dock department, constituted an inability to agree upon a price. (Laws of 1882, chap. 410, § 715.) The appellant having raised no issue of fact to be tried and the answer containing nothing but preliminary objections, they became questions of law and were properly overruled and the order appointing commissioners was properly made. (Code Civ.

Pro. §§ 500, 522, 3357, 3384; *Bennett* v. *L. M. Co.*, 110 N. Y. 150; *Marston* v. *Swett*, 66 id. 210; *Swinburne* v. *Stockwell*, 58 How. Pr. 312; *Clark* v. *Dillon*, 97 N. Y. 370; Abbott's Trial Brief, § 570.) Under the provisions of section 715 of the Consolidation Act, no negotiations to agree upon a price are necessary with a lessee or assignee of a lessee of the property rights sought to be acquired. (*In re R. H. & L. R. R. Co.*, 110 N. Y. 129.) The property rights authorized to be extinguished are described in section 712 of the Consolidation Act. The negotiations by the dock department fulfills the requirements of the law. (Laws of 1882, chap. 410, §§ 712, 715; *Dyckman* v. *Mayor, etc.*, 5 N. Y. 434; *Kiernan* v. *Mayor, etc.*, 79 id. 514; *In re R. H. & L. R. R. Co.*, 110 id. 129.) There is no force in the contention of the appellant that the plan, as evidenced by the map between pages 44 and 45, did not contemplate the taking of appellant's property. (Laws of 1882, chap. 410, § 712.) The new plan of the dock department contemplating the construction of the new bulkhead, 150 feet west of the westerly line of Twelfth avenue and the construction of new piers at the foot of Forty-first and Forty-second streets, respectively, cannot be carried into effect without first acquiring all the rights of the appellant. (*Kingsland* v. *Mayor, etc.*, 110 N. Y. 578.) The fact that the appellant is a corporation engaged in supplying gas under contract with the city authorities for lighting the lamps does not make it a public corporation. (*In re N. Y. C. & H. R. R. R. Co.* v. *M. G. Co.*, 63 N. Y. 326; *In re Dept. of Public Parks*, 53 Hun, 278; *In re Munson*, 39 id. 325.) There is nothing in the suggestion of the appellant that the pier sought to be condemned is a public pier open to the use of commerce. (*S. R. T. Co.* v. *Mayor, etc.*, 128 N. Y. 510.) The grant of wharfage from the exterior line of Thirteenth avenue is not an existing but a mere inchoate right dependent upon conditions never performed, and the appellant company is not entitled to wharfage at a bulkhead at any intermediate point. (Gerard on Titles [3d ed.] 117; *Towle* v. *Remsen*, 70 N. Y. 311; *Mayor, etc.*,

v. *Law*, 125 id. 380; *Langdon* v. *Mayor, etc.*, 93 id. 143; *Kingsland* v. *Mayor, etc.*, 110 id. 569.) The claim of the appellant that the portion of the premises not covered by the pier is open navigable water and open to navigation until the legislature shall change the bulkhead line of 1871, after the plan adopted under said act shall have been carried out and the claim that the respondent might be permitted to fill in the same as land gained out of the Hudson river are conjectural and untenable. (*Kerr* v. *W. S. R. R. Co.*, 127 N. Y. 269; *In re N. Y. C. & H. R. R. R. Co.*, 77 id. 248; *In re N. Y. C. Co.*, 104 id. 1, 43; *Langdon* v. *Mayor, etc.*, 93 id. 157.) In carrying out the plan authorized by the provisions of chapter 574, Laws of 1871, the department of docks is the sole judge of the extent of the lands under water to be acquired, and their judgment is not open to review. (*In re Fowler*, 53 N. Y. 61.) The law under discussion is constitutional. (*Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Williams* v. *Mayor, etc.*, 105 id. 420; *Kingsland* v. *Mayor, etc.*, 110 id. 569; *Bloomfield* v. *Richardson*, 63 Barb. 437; *Bloodgood* v. *Mohawk*, 18 Wend. 9; *In re Townsend*, 39 N. Y. 171; *Morris* v. *Townsend*, 24 Barb. 658; *In re Fowler*, 53 N. Y. 60; *Beekman* v. *Saratoga*, 3 Paige Ch. 45; *B., etc., R. R. Co.* v. *Brainard*, 9 N. Y. 100; *U. S.* v. *Jones*, 109 U. S. 513; *People* v. *B. & O. R. R. Co.*, 117 N. Y. 155.)

PECKHAM, J. In the above title are comprised three separate and distinct proceedings on the part of the city authorities to acquire title to the lands particularly described in the several petitions.

The land described in the first petition is situated between 34th and 35th streets and belongs to the New York Central and Hudson River Railroad Company, although the legal title thereto is vested in the individuals Cornelius and William K. Vanderbilt. It is used by the company for the purposes of its business.

The fee of the land described in the second petition, and which lies between 35th and 36th streets, belongs to the estate

of the late Marshall O. Roberts, and the property has been leased by the executors of his will to the New York Central and Hudson River Railroad Company for purposes connected with the business of that corporation.

The land described in the third petition, and lying between 41st and 42d streets, belongs to the Consolidated Gas Company of the city of New York, and is in use by that corporation for its own purposes.

The proceedings to acquire the various interests connected with these lands were inaugurated by the city authorities in the due prosecution of the general plan duly adopted by the proper city officers, pursuant to the various statutes relating to the construction, possession, ownership and maintenance by the city of piers and bulkheads in the North and East rivers.

The application for the appointment of commissioners to appraise the value of the property to be taken was opposed in each instance by those owning or interested in the property. At Special Term the application was in each case granted, and the General Term, upon appeal, affirmed the order appointing the commissioners. An appeal has been taken from each order to this court.

The parties who oppose these proceedings do so upon three principal grounds:

(1.) They maintain that the act which permits the city to appropriate any of the wharfs, piers, etc., to the *sole* use of special kinds of commerce or of steamboats, and also to lease the piers or property, does thereby in effect provide for a private use of such property, and they say that property which is intended for private use cannot be acquired against the will of its owner by the exercise of the power of eminent domain, either by the state itself, or, as in this instance, by its agent or substitute, the city of New York. (2.) They claim that the property, or some part of it, is already devoted to public use by the railroad and the gas companies, and cannot be condemned to any other public use under a general act of the legislature. (3.) They also urge that the statute contemplates

a real and actual, although ineffectual, attempt to agree upon a price to be paid for the land as a condition precedent to the right of the city to exercise the power of eminent domain, and in each of these proceedings it is contended that no real *bona fide* attempt to agree upon such price was ever in fact made.

The first ground taken by the owners, if tenable, is conclusive against the maintenance of these proceedings. It strikes at the foundation of the whole proceeding, and no step can be taken which will avoid the objection. Private property cannot be taken for private use against the will of its owner, even upon full compensation being made. The objection raises a most important question. If the leasing to a particular steamship line, to the exclusion of all others, certain parts of the water front upon which a bulkhead and a pier have been erected, make the use of the pier a private use, one owner of wharfage rights may refuse to sell, and thus absolutely prevent the building of a pier in that locality by the city, and thus also obstruct to that extent the development of the general plan for docks and piers adopted by the officers of the city under authority of the legislature. The learned counsel for the owners cites many cases to show that the use to which the property is to be applied must be a public use. The question whether or not it be such an use is a judicial one. There is, as I think, unquestionably a distinction between the use which is public and an interest which is public, and where there is simply a public interest, as distinguished from a public use, the right of eminent domain cannot be exercised. The interest may be of a public nature when the use may tend incidentally to benefit the public in some collateral way. In such case the right to take property *in invitum* does not exist.

Speaking in general terms I should say that the public must, under proper police regulations, have the right to resort to the land or property for the use for which it was acquired, independently of the mere will or caprice of any private person or corporation in whom the title to the property would vest

upon condemnation.   Otherwise the use could not be public.
Cases might be cited which declare such principles.   The case
of *In re Eureka Basin, etc.* (96 N. Y. 42), supports this
general doctrine.   In that case the use to which the company
intended to put the land that it desired to acquire was held
not to be a public use, and, among others, one reason for so
holding was the fact that when acquired no one would have
the right to resort to it upon any terms whatever against the
arbitrary will of the company.   It was also held that the com-
pany itself was not proceeding in good faith.

So also in regard to highways.   It has been truly said it is
not the amount of travel upon a highway which distinguishes
it as a public instead of a private road.   A private road might
have the larger amount.   It is the right to travel upon it by
all the world, and not the exercise of the right, which makes
it a public highway.   A public highway to which the public
had not the right of access would be an impossible creation.
And so a public use might generally be defined as the use
which each individual might of right demand upon the same
general terms and for the same general purposes as any other
individual.

These general definitions, however, do not always cover the
case.   The statement that the land must be intended for such
use that all the public may resort to it upon the same terms
was correct undoubtedly in those cases in which the rule itself
has been thus formulated.   It does not, however, accurately
describe for instance the public use of the land which has been
taken for railroad purposes.

The public has a right of access to the various stations of
the company, which right is necessary to enable the public to
avail itself of the right of transportation.   But it has no legal
right to use the bed of the road for any purpose whatever.
There is a right to demand crossings of the road under certain
circumstances, but there is no general right of the public to
use the land of the railroad company.   In the case of such a
corporation the right is transformed into a right on the part
of all the public to demand at any station of the company

transportation over its road upon the legal terms of compensation for person and property. It is this right on the part of the public which makes the use of the land by the company, upon which to lay its rails and plant its depots and freight houses, a public use.

Other illustrations might be given to show, what is plain enough without them, that property may, under certain circumstances, be devoted to a special and particular public use, and yet the entire public be permitted to use it or have access to it only in a very restricted manner.

These observations bear, I think, upon the act which the defendants assail. If the pier or dock is leased to a lessee, the public necessarily is itself, to the extent of the possession of the lessee, excluded from the possession of it. At the outset it is, however, to be observed that the act of 1871, as set forth in section 716 of the Consolidation Act, does not provide that all the piers and docks when owned by the city shall be leased to the highest bidder at public auction, or at all. The property may not be leased to anyone. It is to rest in the discretion of the corporation whether a lease of any portion shall be effected. It cannot, therefore, be said at present that the property required in these proceedings will ever be leased, and hence it could not be affirmed that the property was to be taken for private use, as such expression is construed by counsel for defendants. And when we come to examine the provisions and effect of the statute under consideration as to exclusive use for special kinds of commerce and the leasing of piers to lessees, we must consider the nature of the property which is to be so used or leased, and the object and purpose of such use must be viewed in connection with the whole of the property of like nature under the control and ownership of the city.

The legislation regarding the water front of the city of New York has been quite frequently of late years under examination in this court.

The legislature conferred upon the city by a series of early statutes general authority to construct wharves, and the system

adopted was for the city to convey the land under water to individuals, and they were required to fill up such land and construct wharves, and the right to collect wharfage was at the same time conferred upon them. The lands under water were conveyed to the city in fee, by acts of the legislature, and by charters and grants, to enable the city to fill in such lands itself, or to procure others to do it, as the interest of the city, or in other words the demands of commerce might require. (*Langdon* v. *Mayor*, etc., 93 N. Y. 129.)

This continued the general policy of the city and the state for a number of years. The state itself owed a duty to its own citizens to provide adequate means for the carrying on of the commerce which was sure to come to the one great seaport within its borders. That duty, as was observed by FINCH, J., in *Williams* v. *Mayor*, etc. (105 N. Y. 419, 436), it early imposed upon the city and the citizens, by whom it has steadily been performed at great cost. In 1871 the legislature changed entirely the general system by which this duty of building bulkheads, docks and piers had theretofore been performed.

Instead of devolving upon private owners the duty of building such structures and giving to private individuals the right to collect wharfage, a general and vast system was provided for by the act of 1871 (Chap. 574). That system involved the adoption of a plan for the building of bulkheads and piers by the city itself along the whole water front washed by the two rivers, and the collection of wharfage by the city as compensation for their use. In the opinion of the legislature the time had come when the duty to furnish facilities for commerce should no longer be performed by the action of private owners, and the right to collect wharfage should no longer reside with them, but should be reposed in the municipality which was to provide for the growing necessities of a commerce that was advancing with almost unheard of rapidity. The steps which were to be taken as provided by the legislation of 1871, have already been alluded to in detail in the cases above cited and in *Kingsland* v. *Mayor*,

*etc.* (110 N. Y. 569), and it is unnecessary to repeat them here.

The adoption of the plan spoken of contemplated the purchase or erection and the possession and ownership by the city of a great number of piers to the exclusion of all private ownership, and built in accordance with such plan and in a manner uniform with an exterior line adopted by the city as and for a bulkhead line. In 1871 the transportation of persons and property from and to foreign ports by steamships had even then grown to such dimensions in the city of New York that it became practically impossible to transact the commercial business of the port unless these steamships had permanent piers at which they could load and unload their cargoes, and their numbers had become so great that not only were permanent piers a necessity, but the exclusive and entire possession of such piers had also become so necessary that it was impossible to think of doing the business which was to be transacted unless such exclusive use were in some way provided. To minister to the necessities of commerce by providing fit and proper places in a seaport where ships can be loaded and unloaded with all proper facilities, is a public duty owing by the state and through it by the municipality which governs and controls the port. The only standard by which to judge of the extent of the duty consists in the necessities of the business. If a permanent pier and an exclusive right to its use be a necessity of those large steamship lines, without which business cannot be properly transacted, and in the absence of which the steamers will be sent across the river to New Jersey or to some other port, then the duty rests with the state or municipality to furnish such quarters for a fair compensation or else the state is bound to permit the steamship companies to obtain such accommodations from private owners. Having undertaken the duty imposed upon it by the state to provide such accommodations as the interests of commerce fairly require, all appropriate acts by the city done in the performance of that duty are for a public purpose.

Land which is thus taken is taken for a public use, although

some portion of all the land actually used may be thereafter in the discretion of the city, divided off and placed in the exclusive possession of a lessee for the sole purpose of using it in the transaction of the necessary business connected with the loading and unloading of passengers and cargoes of ships and steamers.

If the necessity for exclusive use exist, such necessity ought to be recognized by the city and the attempt to supply such necessity is an attempt to fulfill a public duty. The fact of exclusive use by the lessee must be considered with reference to all the other property of a like nature possessed by the city and at which all necessary and proper facilities may be afforded for the remainder of the commerce of the port. If an act should be passed which provided for the ownership by the city of all the piers and docks in the port already erected or thereafter to be built, and also directed the leasing thereof by the city to one steamship company so that there would result a total exclusion of all other steamers or ships, it seems to me that the city could acquire no land *in invitum* for the purpose of owning or building piers or docks to be thus let. It would then indeed be the case of an attempt to take private property for private purposes. Such an act would not be a regulation, but in effect it would be a wanton attempt at the destruction of our commercial interests and power. There would in that event be no fulfillment of a public duty, but on the contrary the perpetration of a crime against the public and the interests of our own citizens.

Neither the state nor the city as its agent would be justified, to say the least, in such an arbitrary abuse of its obligations to the civilized and commercial world.

Extreme cases may always be imagined, although they should have but little if any legitimate weight in an argument. The act under consideration is not of such a character. The authority to lease or to give the exclusive use of some piers for specified kinds of commerce bears no relation in fact to the kind of legislation just spoken of. The circumstances surrounding the case must be viewed in all aspects. The act

plainly contemplates through all its provisions the fact that there will always remain under the direct control and possession of the city sufficient piers and docks for the accommodation of all commerce which may seek our port and which has no special pier or dock leased to the owner of the vessel desiring dock facilities.

Considering the large extent of the property of this description owned and to be owned by the city, together with the fact that there is no absolute direction to the city to lease the smallest portion thereof to any one, we become at once convinced that the leasing which will be actually carried on under this mere permission will amount to no more than a special regulation of the manner in which a comparatively small portion of the whole property of this nature owned by the city shall be used for the legitimate ends of commerce.

This mere permission to use property by leasing it to others, when the whole surrounding circumstances are examined, cannot be regarded as providing for its private use.

When used by lessees under the facts already stated, the use is a public one. The use is public while the property is thus leased, because it fills an undisputed necessity existing in regard to these common carriers by water, who are themselves engaged in fulfilling their obligations to the general public; obligations which could not otherwise be properly or effectually performed. And in filling the necessity for such accommodations, the city or the state is only performing its public duty.

For these reasons, we are of the opinion that the first objection taken to the granting of the order for the appointment of commissioners is not tenable.

The defendants' second ground of objection is, I think, equally fallacious.

It is claimed that this property has already been devoted to, and is actually occupied, for a public use, and that it is not within the legislative intent, as evidenced by the general statutes upon the subject, that any land thus used should be condemned for dock or pier purposes.

SICKELS — VOL. XC.     34

The general rule contended for by the defendant, that property devoted to one public use will not be regarded as subject to the right of condemnation for another public use, unless the statute plainly grants such right, may be admitted to the full extent thus stated. It is not necessary that the statute should in terms so enact. A necessary implication arising from language used is quite sufficient in this as in other cases for the purpose of an enactment. There is, however, in this statute a clear grant in terms of the power to condemn *all* wharf property in New York city to which the city has no right or title, and also any rights, terms, easements and privileges pertaining to any wharf property in the city and not owned by the city. (§ 715, New York Consolidation Act.)

We think this is a sufficient grant of power to include in condemnation proceedings property of the nature described in the statute, even when owned by a railroad or a gas company, and used by the company for landing freight or other property. The property to be taken need not be necessary for the purpose of building a pier or dock according to the plan adopted by the city officers. The act goes much farther than that, and includes the power to take property of this nature belonging to private individuals, so that the whole wharf property may belong to the city. In building piers, wharves, docks, etc., under and pursuant to the plan adopted by the commissioners of docks, the actual building is to be carried on pursuant to the conditions imposed by section 714 of the Consolidation Act, without interfering with the rights or property of any other person, excepting as therein stated. Further power is then given by section 715 of the same act, by which private ownership of all property of this nature may be extinguished and converted into ownership by the city. It is not, therefore, necessary to show that the land proposed to be taken is required in order to carry out the building of any particular pier, or dock, or bulkhead, under the plan already spoken of. It may be required in order to enable the city to carry out its general plan, and to extinguish the title of private parties to certain wharfage property, and to acquire the same for the

city, and if so, the statute permits the acquisition for that purpose.

It was said in *Kingsland* v. *Mayor, etc.* (*supra*), that the wharves of private owners were to be purchased under the provisions of this act, or taken in the ordinary manner by proceedings under the right of eminent domain. It is plain that the act contemplated the purchase or condemnation of this kind of property, without reference to the question of the particular owners of the same, whether they were private individuals or corporations. The purpose was to place the ownership of all property of this nature in the city itself, to which the whole power of regulation and government was to be given. We agree with what was said upon this subject by the learned presiding justice who delivered the opinion of the General Term in the case of the Consolidated Gas Co., the order in which proceeding is among those herein under review.

As to the third ground of objection, which sets up that there has been no real attempt at an agreement upon the price, and that, therefore, there is no inability to agree set forth, we can add nothing to what has already been said in the Supreme Court upon that subject, and for the reasons therein expressed, we conclude the objection to be unfounded.

The orders should, therefore, in all the proceedings be affirmed, with costs.

All concur.

Orders affirmed.