HAWKINS, AS TAXPAYER, ETC. *v.* CITY OF GREENFIELD, ETC.

[No. 31,160. Filed October 17, 1967.]

*Raymond S. Robak* and *Wolf & Robak,* of Greenfield, for appellants.

*Kenneth McDermott* and *McDermott & Shumaker,* of counsel, of Greenfield, *Harry T. Ice, Robert D. Risch, Robert D. McCord,* and *Ice, Miller, Donadio & Ryan,* of counsel, of Indianapolis, for appellees except John J. Dillon, Attorney General.

*John J. Dillon,* Attorney General, and *James W. Commons,* Assistant Attorney General, for appellee, John J. Dillon, Attorney General, of Indiana.

MOTE, J.—The constitutional validity of the Municipal Economic Development Act of 1965 is presented herein for our consideration and determination.

The action below was brought by Appellant, a taxpayer of the City of Greenfield on behalf of himself and all other persons similarly situated, against the City of Greenfield, the members of the Greenfield Economic Development Commission, the Mayor of the City, the members of the Greenfield

Common Council, the George J. Mayer Company and the Attorney General of Indiana.

The said action sought relief and asked for a perpetual injunction against the defendants, Appellees herein, enjoining them from appropriating funds for the expenses of the Greenfield Economic Development Commission; from entering into and executing a lease agreement with the George J. Mayer Company; from issuing economic development revenue bonds; from constructing and furnishing with equipment an individual building; and for all proper relief.

The issues were formed by the complaint and answers by the defendants. Said complaint, among other things, alleged the following:

That the indebtedness of the City of Greenfield on its proposed economic development revenue bonds will exceed two (2%) percent of its net assessed valuation; that Chapter 402 of the Acts of the Indiana General Assembly for the year 1965 violates the provisions of Article 1, Section 23, of the Indiana Constitution and the 14th Amendment of the United States Constitution in that it authorizes the granting of privileges to persons (including Corporations) whom Economic Development Commissions wish to negotiate with to the exclusion of others with whom the Economic Development Commissions choose not to negotiate; that Chapter 402 of the Acts of the Indiana General Assembly for the year 1965 violates the provisions of Article 1, Section 21, of the Indiana Constitution; and the 14th Amendment of the United States Constitution in that it authorizes the levying of taxes and the condemnation of property for private rather than a public purpose; that Chapter 402 of the Acts of the Indiana General Assembly for the year 1965 violates the provisions of Article 10, Section 6, and Article 11, Section 12, of the Indiana Constitution in that such Act authorizes the lending of the credit of the City of Greenfield and the State of Indiana as well as the County of Hancock; that Chapter 402 of the

Acts of the Indiana General Assembly for the year 1965 violates the provisions of Article 13, Section 1, of the Indiana Constitution in that it authorizes the incurring of indebtedness by a City in excess of two (2%) percent of the value of taxable property within such corporation as ascertained by the last assessment for State and County taxes previous to the incurring of such indebtedness; that the issuance of such revenue bonds would cause irreparable damage to the City of Greenfield, the plaintiff and to all others similarly situated in the following manner: (a) the continued operation of the Greenfield Economic Development Commission will be a waste of public funds as Chapter 402 of the Acts of the Indiana General Assembly for the year 1965 is unconstitutional; (b) the issuance of such revenue bonds will lessen the advantage of exemption from Federal income tax of interest payable on bona fide bonds of the City to be issued in the future; (c) the issuance of such revenue bonds by the City will risk a default in the payment of principal and interest of such bonds if the lease rental is not paid, which default would have an adverse affect on the credit rating of the City in issuing future bona fide bonds; (d) such water, electric and sewer extensions will be paid for by plaintiff and all other rate payers.

The trial court determined the issues and entered judgment as follows:

"1. The Court has jurisdiction of the parties and of the subject matter of the action.

2. There is a real controversy between plaintiff and all others similarly situated and the defendants.

3. Acquisition and leasing of industrial facilities as authorized by Chapter 402 of the Acts of the Indiana General Assembly for the year 1965 is for a public purpose.

4. Such proceedings and the financing thereof by the issuance of revenue bonds payable only from lease rentals do not constitute the lending of credit or any indebtedness.

5. Said Act does not grant privileges not available to all.

6. Said Act is not in conflict with the following sections create of the Indiana Constitution:

   | Article 1 | Section 23 |
   |-----------|------------|
   | 1 | 21 |
   | 10 | 6 |
   | 11 | 12 |
   | 13 | 1 |

   or the 14th Amendment of the United States Constitution.

7. Plaintiff is not entitled to an injunction against defendants or any of them.

8. Any findings of fact stating a conclusion of law is considered as being a conclusion of law, and any conclusion of law stating a finding of fact is considered as being a finding of fact."

Appellants' Motion for a New Trial was presented and overruled; they now assert error in such ruling to sustain this appeal. Essentially, Appellants urge that the decision below is contrary to law because of the constitutional invalidity, in four different particulars, of the Municipal Economic Development Act of 1965. We shall discuss in order each of the four assertions.

First, Appellants urge that the Act in question violates Article 10, Section 6, and Article 11, Section 12, of the Indiana State Constitution in that said Act authorizes the lending of credit of the City of Greenfield, Hancock County, Indiana. Said Articles and Sections provide as follows:

"ARTICLE 10, SECTION 6. COUNTY INDEBTEDNESS FOR STOCK—STATE ASSUMPTION OF DEBTS.—No County shall subscribe for stock in any incorporated company, unless the same be paid for at the time of such subscription; nor shall any county loan its credit to any incorporated company, nor borrow money for the purpose of taking stock in any such company; nor shall the General Assembly ever, on behalf of the State, assume the debts of any county, city, town, or township; nor of any corporation whatever.

ARTICLE 11, SECTION 12. STATE NOT TO BE STOCK-HOLDER.—The State shall not be a stockholder in any bank, after the expiration of the present bank charter; nor shall the credit of the State ever be given, or loaned, in aid of any person, association or corporation; nor shall the State hereafter become a stockholder in any corporation or association."

To sustain their contention, Appellants have cited and quoted from various authorities from other jurisdictions, such as: *State* v. *City of York* (1957), 82 N. W. 2d 269; *Village of Moyie Springs Idaho* v. *Aurora Mfg. Co.* (1960), 353 P. 2d 767; *State* v. *Town of North Miami* (1952), 59 So. 2d 779; *State* v. *Clay County Development Authority* (1962), 140 So. 2d 576. Appellants also cite and variously quote from authorities in our own jurisdiction, such as: *Ennis* v. *State Highway Commission* (1952), 231 Ind. 311, 108 N. E. 2d 687 and *Orbison* v. *Welsh* (1962), 242 Ind. 385, 179 N. E. 2d 727.

Perhaps we should preface our remarks by stating that we think it to be incumbent upon us to follow logical and substantial precedents and trends already established in our State. With this in mind, we would suggest that the two Indiana authorities cited by Appellants go far in negating their contentions. The proposed economic development revenue bonds payable solely from the lease rental to be paid by George J. Mayer Company, proposed lessee, to the City of Greenfield for the purposes enumerated in the said Act, do not appear to amount to a pledge of credit contrary to and in violation of Article 11, Section 12, of the Indiana Constitution above set forth where, as here, the so-called credit is not for the use of a private corporation. Under our latest decisions, it should be perfectly clear that the said Act of 1965 now under attack because of its asserted constitutional invalidity and as violative of Article 10, Section 6, and Article 11, Section 12, meets all the tests applicable. We regard the purpose and the public policy announced by its enactment to be completely within the framework of both *Ennis* and *Orbi-*

*son,* supra. As a matter of fact, comparison of the language of the Act now under assault with the Acts involved in both *Ennis* and *Orbison,* supra, indicates an attempt to follow them closely, thus to remain within the borders of legislation already approved. (See the cited cases for extensive remarks on this subject.)

The public purpose to alleviate poverty and unemployment, to prevent crime and disease, to reduce cash welfare payments, etc., as stated in the Act and the duly adopted resolution of the City of Greenfield amply supports constitutional validity under the above referred to provisions of the Indiana Constitution. It cannot be gainsaid that the organization is a public one in contradistinction with a private one, despite the fact that the public municipal body, Appellee, Greenfield Economic Development Commission, duly created by the said City under legislative authority, the Municipal Economic Act of 1905, proposes to lease the facilities to a private corporation, George J. Mayer Company.

Citing *Dyer* v. *Mayor, etc., City of Baltimore c.c.* (1905) 140 F. 880, appeal dismissed, 1906, 201 U. S. 650, 26 S. Ct. 759, 50 L. Ed. 905; *In re Mayor, etc. of City of New York* (1892) 135 N. Y. 253, 31 N. E. 1043, 31 Am. St. Rep. 825; *Marchant* v. *Mayor and City Council of Baltimore* (1924) 146 Md. 513, 126 A. 884, this Court stated in Orbison v. Welsh, supra, 179 N. E. 2d at page 735:

> " 'As aptly stated by Peckham, J., in In re Mayor, etc., of New York, supra: "When used by lessees under the facts already stated, the use is a public one. The use is public while the property is thus leased, because it fills an undisputed necessity existing in regard to these common carriers by water, who are themselves engaged in fulfilling their obligations to the general public,—obligations which could not otherwise be properly or effectually performed." '
>
> The Court concluded that where the lease of a particular facility aided the accomplishment of the primary and public purposes of the Authority, the fact that the lessee was a private corporation was incidental and not controlling."

*City of Gaylord* v. *Beckett* (1966) 378 Mich. 273, 144 N. W. 2d 460, 464, is cited in support of a valid and attractive reason for the issuance of revenue bonds payable from the lease rental to be paid by the lessee of the industrial facilities, as follows:

> "Because section 103 of the internal revenue code of 1954 (U.S.C.A., Title 26, § 103[a] [1]) grants a tax exemption to the income from municipal bonds, the net result of this transaction is that the city of Gaylord lends its tax-free status to the corporation so that the interest on what would otherwise be a private bond issue becomes tax-free."

All lawful means may be exercised in the *avoidance* of taxes. Whether this or a similar reason is the origin of or the motivating cause for the type of creation here instant may be open to speculation; however, should it develop that the transactions here encompassed will provide and continue to provide tax exemption, so long as it is not in conflict with other and more important postures of public policy, the success of the public venture will be enhanced.

We do not find herein, as Appellants contend and argue, that the dominant and paramount purpose that the arrangement is to lend public credit to a private corporation. The facts do not support such contention and argument and it may be said that the authorities from other jurisdictions, as well as some of our own earlier cases, cited by Appellants are in line with the modern authorities in Indiana if we engage in the distinctions prevailing in the case at bar.

Second, in the course of our history, and based upon what appears to be public necessity, broader and more extensive use of the power or right of eminent domain has been exercised by the legislative bodies of our Nation. It appears that almost every session of our General Assembly has provided for an extension of its use.

Appellants have not cited or quoted the Indiana constitutional provision, as contained in the Bill of Rights, with respect to Eminent Domain. It is in part as follows:

"Article 1. Section 21. Compensation for service or property.—No man's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered."

We are unable to comprehend how and in what manner the Municipal Economic Development Act transgresses our Indiana Constitution. While it may be admitted that this legislation is far in advance of contemplative license of a generation ago, it now may be said to come generally within permissive limits of legislative authority and also within constitutional borders.

Despite arguments to the contrary, modern approach to creative powers must be given judicial approval unless definitively abortive to a reasonable charter interpretation. In this respect, the General Assembly has sought to provide new and additional means for coping with some of the most perplexing of problems of a local nature which also may be generally applied. We believe that it is entirely proper for our Legislative Branch of government to delegate authority to local units in an attempt to solve the critical problems thereof, based upon established public policy.

Section 2 of the Act, Burns' § 48-8702, provides:

"It is hereby found and declared that there are urban areas in the State of Indiana in which there are insufficient employment opportunities and insufficient diversification of industry, which conditions are harmful to the prosperity, economic stability and general welfare of such areas. It is further declared that the acquisition of facilities and the leasing thereof to others by municipalities in order to overcome such conditions is a public purpose."

It is our opinion that the judiciary should give effect or approval, when called upon to determine the expressed legislative intent or public policy, where and when it can reasonably do so. In *Fountain Park Company* v. *Hensler* (1927) 199 Ind. 95, 155 N. E. 465, 50 A. L. R. 1518, this Court said:

"All questions relating to the expediency of taking private property for public use are exclusively for the Legislature . . ., and therefore when the public nature of a use . . . is disputed, the question which presents itself to the courts is not whether the use is public, but whether the Legislature might reasonably have considered the use to be public. The presumption being in favor of the legislative declaration, yet not conclusive, the courts will treat the decision of the Legislature with consideration, and will not interfere therewith unless the use is clearly and manifestly of a private character . . ."

To indicate the broadening exercise of the use or power of eminent domain, as well as the delegation thereof to municipal, semi-municipal and private bodies, as above stated, we have only to cite and quote from *Fountain Park Company* v. *Hensler, supra*, as follows:

"The state or government, possessing the sovereign power, has always taken for its use the property it needs. The state of Indiana has, by statute, delegated this power to the following public and private corporations: To cities and counties for aviation fields to bridge companies; canal companies; to cities, towns and corporations operating public cemeteries; to cities for laying out and changing streets; to the state conservation department; to county commissioners for certain public buildings and monuments; to flouring mills for dams; to electric companies; gas companies; to the state highway commission and to counties for highways generally; to counties for general hospitals; to hydraulic and hydraulic power companies; to interurban electric railways; to oil companies for pipe lines; to railroads; to public school corporations; to stockyards companies; to street railroad companies; to turnpike companies; and to waterworks companies—but in every case it seems that there has been a rule of necessity which required the power to be invoked."

Among the authorities which lend support to the constitutional validity of the exercise of eminent domain is *Edwards* v. *Housing Authority of the City of Muncie* (1939) 215 Ind. 330, 19 N. E. 2d 741, wherein this Court said:

"The purposes of the acts in question, as indicated by their titles, are to provide for public bodies corporate, to be

known as housing authorities, to undertake slum clearance and provide dwelling accommodations for persons of low income; . . .",

and in upholding the constitutionality of these Acts, this Court further said:

"That the Legislature has power to protect public health, safety, morals, and welfare, and to exercise and to authorize the exercising of the power of taxation and eminent domain, and the raising and expenditure of public funds for such purposes, cannot be doubted. . . .

The name given to such an instrumentality is of no significance, nor do we find any limit upon the character or number of public corporations or bodies politic, which the Legislature may authorize or create to accomplish such purposes. The facts found by the Legislature and recited, in the enactments are not disputed, or their existence denied, and, since the conditions described must be assumed to exist and to affect the public welfare, it can scarcely be doubted that there is a public interest which justifies the undertaking of the projects authorized by the enactments. . . .

The properties to be acquired and constructed will belong to the public, and, since their purpose is a public one, the authorities may be legally invested with the power of eminent domain. . . .

The right to secure the benefits of such projects for the public generally cannot be denied because incidental special benefits may accrue to some individuals. . . .

The determination of the Legislature that there is a public interest in the subject-matter of the act, and that housing projects are devoted to a public use and a public benefit, seems to have the support and the concurrence of the Congress of the United States, and, as appellees advise us, the Legislatures of 32 states which have enacted similar legislation."

Again, in *Westport Stone Company* v. *Thomas* (1910) 175 Ind. 319, 94 N. E. 406, 35 L. R. A., N. S. 646, this Court stated:

"It is said in 3 Thompson on Corporations (2d Ed.) § 2743: 'Conceding the rule that property can only be taken for a public use, the difficulty encountered is usually in the determination of what constitutes a public use. The term itself

is difficult of exact definition, but it is conceded that public benefit is one of the essential characteristics of a public use. The opinions of the courts have undoubtedly been tempered by harmonizing public use with public benefit and public utility, as well as the general welfare of the state. Indeed, the determination of the question may depend somewhat on the nature of the wants of the community for the time being. However, it is well settled that instrumentalities which tend to promote the manufacturing industries of the state, to develop and utilize its natural resources and advantages, to create the need of markets, for its products, and to furnish labor for its mechanics, are of great public benefit, and may constitute the required public use. These general principles are supported by many cases showing a great variety in their application'—citing many cases."

In *Kessler* v. *City of Indianapolis* (1927) 199 Ind. 420, 157 N. E. 547, 53 A. L. R. 1, this Court also said:

". . . a use which is in itself of a public character justifying the exercise of the power of eminent domain does not lose its character as such by the fact that the exercise of the power for such use will incidentally result in a private use or benefit."

There are substantial guide lines and authorities which encompass the leasing of facilities to private organizations, the origin of which emanated from the condemnation of privately owned real estate. *Alanel Corporation* v. *Indianapolis Redevelopment Commission* (1958) 239 Ind. 35, 154 N. E. 2d 515, concerned the constitutional validity of an Act which permitted a municipality to condemn the property of one to sell to another for the purpose of redevelopment of a blighted area defined as follows:

" 'any area within the corporate limits of a city to which this act is applicable, . . . which because of lack of development, cessation of growth, deterioration of improvements or character of occupancy, age, obsolescence, substandard buildings or other factors which have impaired values or prevent a normal development of property, or use thereof, has become under current conditions undesirable for or impossible of normal development and occupancy.' "

In upholding the validity of that Act, this Court said further:

"It seems logically to follow that if the taking of property for slum clearance constitutes a public use or purpose, the taking of property to eliminate a blighted area as it is defined in the Act would also constitute a public use or purpose."

The case of *Foltz* v. *City of Indianapolis* (1955) 234 Ind. 656, 130 N. E. 2d 650, presented a situation quite similar to the one at bar. We held therein that eminent domain or condemnation properly could be exercised by a municipality to provide off-street parking facilities to be leased to a private operator for profit. This Court therein remarked:

"The court decisions, through the centuries, recognize that changing economic conditions create new uses and businesses that were not in existence or contemplated in earlier times, and that certain kinds of businesses are affected with a public interest . . .

The first test of a public calling or 'business affected with a public interest' was that of economic necessity."

The recent case of *Orbison* v. *Welsh, supra,* presents a splendid example of comparable legislative intent and expressed public policy. This Court upheld therein the constitutional validity of the Indiana Port Commission Act which also provided for an agency of the State to lease state-owned land to private persons for private profit. This Court stated:

"The same argument here advanced against the validity of a lease by a public corporate entity such as the Port Commission to private persons was refuted in the case of North Carolina State Ports Authority v. First-Citizens Bank & Trust Co. (1955), 242 N. C. 416, 422, 88 S. E. 2d 109, 113, where the Court stated: . . . 'When used by lessees under the facts already stated, the use is a public one. The use is public while the property is thus leased, because it fills an undisputed necessity existing in regard to these common carriers by water, who are themselves engaged in fulfilling their obligations to the general public,—obligations which could not otherwise be properly or effectually performed.' . . .

The Indiana Port Commission Act applies to the entire state; it is neither a local nor special act. The Port Commission was established to foster the agricultural, industrial and commercial development of the whole state, and to provide for the general welfare of all citizens of Indiana. . . . We have heretofore stated in this opinion . . . that the Port Commission is an agency or instrumentality of the state created for a public purpose."

Concerning Appellant's second objection it is our view and conclusion that the stated purposes of the Act in question and the public policy therein adopted followed minutely by Appellees in the creation of its Economic Development Commission is not well taken, but on the other hand, the said Act and the created Economic Development Commission is in all respects valid.

Third, Appellants assail the constitutional validity of the Municipal Economic Development Act for the reasons that: (1) its provisions are arbitrary and capricious; (2) it authorizes the granting of privileges to persons (including corporations) with whom the Commissions may wish to negotiate for loans for industrial purposes to the exclusion of those with whom it does not wish to negotiate; and therefore, the provisions of the Act are in violation of Article 1, Section 23, of the Indiana Constitution and Article 14, Section 1, of the United States Constitution.

Article 1, Section 23, of the Indiana State Constitution provides as follows:

"The General Assembly shall not grant to any citizens, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

Article 14, Section 1, of the United States Constitution provides as follows:

"CITIZENSHIP — DUE PROCESS OF LAW — EQUAL PROTECTION. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they

reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Appellants quote Sections 2, 10 and 12 of Chap. 402 of the Acts of 1965 (Municipal Economic Development Act) and cite *Yick Wo* v. *Hopkins* (1886) 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220, with the quotation:

"Arbitrary and unreasonable discrimination are prohibited by the Constitution.",

and to further support their contentions, Appellants cite *Gianatasio* v. *Kaplan* (1932) 284 U. S. 595, 52 Sup. Ct. 203, 76 L. Ed. 512, with this quotation:

"The 14th Amendent secures every person within the States jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."

We do not find the language above quoted from the *Gianatasio* v. *Kaplan* case, as the appeal was dismissed "for the want of a substantial Federal question" by a mere memorandum. As to *Yick Wo* v. *Hopkins, supra,* a cursory examination of the question involved and the language employed does not serve Appellants. Indeed, without lengthy comment which would be necessary if we were to embark upon the application of the case to the one at bar, we conclude that it fits well within the structure of this appeal and supports the Appellees' contentions.

Appellants' posture on the question at hand is not at all clear. If Appellants suggest and contend that each and every individual citizen in all cases must be afforded a completely equal opportunity to participate in each and every occurrence or event which relates to governmental enterprise, we believe that a study of their own citation, *Yick Wo* v. *Hopkins, supra,*

will be enlightening. We do not have a Democracy; ours is a Republic. Selective representatives execute administrative, legislative and judicial functions within a prescribed as well as a proscribed authority. Here we have a delegation by the Legislative Branch of the State Government of authority to provide to its municipalities means and methods of accomplishment of a purpose, as defined by Burns' § 48-8702. The Appellee, City of Greenfield, is merely adopting that authority and insofar as we are able to perceive, it carefully has acted wholly in accord with its delegated authority. Assertion to the contrary ordinarily would not be expected.

On August 22, 1966, as stipulated by the parties, the duly constituted Greenfield Economic Development Commission adopted a written resolution finding "that because of existing insufficient employment opportunities, and insufficient diversification of industry, the economic welfare of the City of Greenfield would be benefited by the acquisition and leasing to others of industrial facilities", which resolution was approved by the Common Council thereof on August 27, 1966.

The said Commission had estimated the public services which would be necessary or desirable, the expenses thereof, the number of jobs, the estimated payroll on account of such acquisition and leasing of the proposed facilities and the costs of the proposed construction thereof, all of which was reported to the Greenfield Plan Commission and the Board of Trustees of the Greenfield Community Schools who filed their comments thereon.

Such estimate, reports and comments were filed with the City Clerk within thirty (30) days of receipt and approved by the Common Council of said City by a resolution adopted on September 16, 1966.

Thereafter, on November 10, 1966, the City of Greenfield, acting through the said Greenfield Economic Development Commission, entered into a commitment with George J. Mayer Company, also an Appellee, for the leasing of land, building

and equipment to cost approximately $1,500,000.00 and with Wildman Neal & DeBolt, Inc., not a party hereto, to act as a fiscal adviser.

Appellant, Paul Hawkins, asserts that he is the owner of taxable real estate and personal property located within the said City; that he is a user of water, electricity and sewer service and a rate payer therefor, and that he brings the action as a taxpayer for himself and all others so situated. He complains that the City of Greenfield is threatening to and will, unless enjoined, (a) appropriate money for the expenses of operation of the Greenfield Economic Development Commission; (b) enter into a lease agreement with the George J. Mayer Company; (c) acquire land by purchase or condemnation; (d) advertise for and receive construction bids; (e) authorize and issue economic development revenue bonds payable solely from the lease rental to be paid by George J. Mayer Company to the City of Greenfield; (f) construct and furnish with equipment an industrial building; and (g) from funds on hand collected from rate payers extend water, electric and sewer lines to serve such building.

Appearing perhaps to have digressed from the proposition under consideration, that is, the asserted violation of Article 1, Section 23, of the Indiana Constitution and of Article 14, Section 1, of the Constitution of the United States, we again advert thereto. Were this Court to follow what we understand to be the direct implications of Appellants' contentions, a most untenable handicap in the conduct of governmental affairs would result. It is apparent that the City of Greenfield adopted the legislative authority for the purpose of alleviating what were found to be impediments in its progress and to provide for the general welfare of the community and its citizens. Furthermore, legislative authority of the character here involved is, after many decades of tendancy to centralization of power, refreshing, indeed. Acting within proscribed limits, the creation of an enterprise for the designed purpose of

ostensibly providing self-help and the solution of local problems is to be commended, and simply because a few individuals thereby may be offended does not indicate that their rights under either the State or Federal Constitutions are adversely affected. We think that the authorities and interpretations of either Article 1, Section 23, of the Indiana Constitution or Article 14, Section 1, of the Constitution of the United States have no adverse impact upon the matter before us. It has been said that:

> "Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if ■ within the sphere of its operation it affects alike all persons similiarly situated, is not within the amendment." (14th Amendment to the U. S. Constitution.) *Yick Wo* v. *Hopkins, supra.*

As will be further dwelt upon under the Appellants' fourth objection, we consider the functions, duties and the portrayed methods of operation of the Greenfield Municipal Development Commission to be quite similar to many other municipal or state agencies heretofore either created by or sanctioned by legislative enactment. In the fulfillment of a public purpose, it often may be said, we think, that some may suffer inconvenience, sentimental deprivation, peace of mind or even a sense of frustration. New ideas and change of thought to meet present and future problems and conditions always must be contemplated and provided with fertile soil for experimentation, development and growth. As we see it, no better start can be had than a small scale, local level approach. Indeed, our State is so rapidly changing in so many ways that our present day scheme of government necessarily must be altered by more and further delegated authority to a larger and increased number of units of local government. Our people no longer can afford the intricacies of overlapping authority which finally results in poor supervision and unattended obligations.

Several fairly recent authorities in Indiana can be cited to support Appellees' views. They concern the changing times and needs about which we have written above. The ■ mere fact that all of our citizens are unable, for various and diverse reasons, directly or indirectly, to participate in and negotiate for some part of a proposed public development or enterprise, appears to be but a lame excuse for seeking a declaratory judgment that the proposal is constitutionally invalid. Apropos of this remark is some of the language to be found in *Edwards* v. *Housing Authority of the City of Muncie, supra,* in which this Court said:

> "It is contended that the act is unconstitutional in that it attempts to grant to a class of citizens privileges or immunities which, upon the same terms, do not equally belong to all citizens; that, since the properties of the housing authorities are to be exempted from taxation, and are to be furnished for a rental sufficient only to pay costs without profit, the tax exemption inures directly to the benefit of the tenants, and that they as a class are receiving a benefit which is not enjoyed by the public generally. But the same character of private benefit is found in connection with all public, charitable, or quasi-charitable enterprises. *The right to secure the benefits of such projects for the public generally cannot be denied because incidental special benefits may accrue to some individuals.*" (Emphasis supplied.)

We will quote further from *Edwards* v. *Housing Authority, etc., supra,* in our treatment of Appellants' fourth proposition to which we now direct our remarks.

Fourth, Appellants charge that the Act under consideration, i.e. "Chapter 402 of the Acts of 1965, is unconstitutional in that it violates Article 13, Section 1, of the Indiana State Constitution, in that it authorizes, and the City of Greenfield is threatening to and will unless enjoined, authorize and issue economic development revenue bonds in the name of the City of Greenfield" which, if issued, will exceed the net assessed valuation of said City by more than two (2%) per centum.

Article 13, Section 1, of the Indiana State Constitution provides, in significant part, as follows:

"LIMITATION ON INDEBTEDNESS—EXCESS VOID. —No political or municipal corporation in this State shall ever become indebted in any manner or for any purpose to an amount in the aggregate exceeding two percentum on the value of the taxable property within such corporation, to be ascertained by the last assessment for State and County taxes, previous to the incurring of such indebtedness; and all bonds or obligations, in excess of such amount, given by such corporations, shall be void:"

To sustain this charge, Appellants cite two cases: *Hively* v. *School City of Nappanee* (1929) 202 Ind. 28, 169 N. E. 51, 171 N. E. 381, 71 A. L. R. 1311, and *Voss* v. *Waterloo Water Co.* (1904) 163 Ind. 69, 71 N. E. 208, 66 L. R. A. 95. The language in the opinions in these cases, and depended upon by Appellants, does not apply in this appeal for the reason that the title to the real estate is not to be held by the City, as in *Hively* v. *School City of Nappanee, supra*. Furthermore, since the decision therein, our General Assembly not only has enacted so-called curative but also enabling legislation as well. (See Acts 1933, ch. 162, p. 849, 1946 Repl. § 28-3201 et seq. 1967 Pocket Supp. and cases thereunder cited.) As an historical and a fact matter, it seems apparent that legislative provision for the creation, organization and regulation of School Holding Corporations may have furnished the breakthrough for constitutionally valid financing of various agencies in Indiana created by the Legislative Branch, including the one at hand. And without adversely affecting in any manner a taxpayer's and a citizen's right to complaint, the 1967 Session of our General Assembly, by the enactment of "An act concerning lawsuits against municipal corporations, etc.", Ch. 357, p. 1337, et seq., § 3-3301 et seq., Burns' 1967 Temp. Pamphlet Supp., has appeared to recognize the many unwarranted delays occasioned by nuisance litigation with little or no merit by providing for bonds for damages in suitable situations.

In the appeal before us, it would appear that Appellants depend upon out of date law to sustain their contentions. As

a matter of fact, as early as 1890, it was decided in our jurisdiction that obligations payable from a specified fund do not create a debt in the sense here applied. This Court stated in *Quill* v. *The City of Indianapolis* (1890) 124 Ind. 292, 23 N. E. 788; 7 L. R. A. 681:

> "A fair interpretation of the statute requires that the character of the bonds, and the fact that they are payable out of a special street improvement fund, shall appear upon the face of the paper; thus making it apparent to the world that they are not to be regarded as the obligations of the corporation. While the common council and officers of the city are designated as the instruments to be used in executing the scheme devised, it is apparent, all the way through, that the entire expense of constructing an improvement for which bonds may be issued is to be borne exclusively by the property benefited. In Strieb v. Cox, 111 Ind. 299, 12 N. E. Rep. 481, it was held that bonds issued by the board of county commissioners for the purpose of raising money to pay for the construction of a free gravel-road do not constitute an indebtedness against the county, within the inhibition of article 13 of the state constitution. The principles which uphold that decision fully sustain our conclusion in this. See also, Board [Com'rs. Riley County] v. Hill, 115 Ind. 316, 1 N. E. Rep. 156. Merely issuing bonds or certificates which show upon their face that they are issued in the course of constructing a street improvement, and that they are payable out of a special fund to be derived from assessments upon the property bordering on the street, is very far from creating a debt against the city."

We have here the duly created agency of the Greenfield Economic Development Commission, through which all of the activities are to be forwarded, save the provisions that the bonds are to be issued in the name of the City; however, it definitely is specified that the bonds shall provide that they are not to be either direct or indirect obligations of the City itself, but on the other hand, said bonds and the necessary service and interest are to be paid solely and only out of the lease rental revenue. Speaking through the late Judge Monks, this Court stated in *City of LaPorte* v.

*Gamewell Fire Alarm Telegraph Company* (1896) 146 Ind. 466, 45 N. E. 588:

> "A debt, in its general sense, is a specific sum of money, which is due or owing from one person to another, and denotes not only an obligation of the debtor to pay, but the right of the creditor to receive and enforce payment. State v. Hawes, 112 Ind. 323, 14 N. E. 87; City of Valparaiso v. Gardner, 97 Ind. 1; Crowder v. Town of Sullivan, 128 Ind. 486, 28 N. E. 94. It is the rule in this state that when a municipal corporation contracts for a usual and necessary thing, such as water or light, and agrees to pay for it annually or monthly, as furnished, the contract does not create an indebtedness for the aggregate sum of all the installments, since the debt for each year or month does not come into existence until it is earned. The earning of each year's or month's compensation is essential to the existence of a debt. Crowder v. Town of Sullivan, supra, and authorities cited; City of Valparaiso v. Gardner, supra, and cases cited; Foland v. Town of Frankton, 142 Ind. 546, 41 N. E. 1031, and authorities cited; Seward v. Town of Liberty, 142 Ind. 551, 554, 42 N. E. 39; 1 Dill. Mun. Corp. (4th Ed.) § 136a; Wade v. Oakmont Borough, 165 Pa. St. 479, 30 Atl. 959; Brown v. City of Corry (Pa. Sup.) 34 Atl. 854. If the city can pay this indebtedness when it comes into existence without exceeding the constitutional limit, there is no indebtedness, and therefore no violation of the constitution."

We want it understood that our decision herein does not rest upon the next above announced principle; however, we do think it is appropriate to state that Appellants have not demonstrated error under this principle.

Other authorities of similar import are readily available, but in the interest of brevity we quote from a Supplemental Footnote to the majority opinion found in 198 N. E. 2d 755 in the case of *Lurie* v. *City of Indianapolis* (1964) 245 Ind. 457 199 N. E. 2d 699, which in our minds presents the modern approach to the solution to the questions posed in this appeal and to which we adhere:

> "A dissenting opinion by Achor, C. J., on July 1, 1964, has been filed in this case placing reliance on the cases of Cerajewski v. McVey (1947) 225 Ind. 67, 72 N. E. 2d 650, 171

A. L. R. 723; and Rappaport v. Dept. of Public Health (1949), 227 Ind. 508, 87 N. E. 2d 77, 88 N. E. 2d 150, which held the additional taxing and hospital districts there created to be unconstitutional. The dissent further states such decisions '. . . are landmark cases which have been cited and relied upon in nearly every case wherein the constitutionality of a newly created taxing and bonding authority has been established . . .', specifically referring to: Datisman, etc. v. Gary Public Library (1960), 241 Ind. 83, 170 N. E. 2d 55; Book v. Board of Flood Control Comrs., etc., et al. (1959), 239 Ind. 160, 156 N. E. 2d 87; Martin v. Ben Davis Conservancy Dist. (1958), 238 Ind. 502, 153 N. E. 2d 125; Protsman v. Jefferson-Craig Consol. School Corp. (1953), 231 Ind. 527, 109 N. E. 2d 889; Dept. of Pub. Sanitation, etc. v. Solan (1951), 229 Ind. 228, 97 N. E. 2d 495. (See note 5 of dissent.)

The facts however are otherwise as the Datisman, Book, Martin, and Dept. of Pub. Sanitation cases instead of relying on Cerajewski and Rappaport, distinguished them and held them not applicable. And in the remaining case, Protsman, reference is made to an interesting article appearing in 25 Indiana Law Journal at page 325, pointing up the problems posed by Cerajewski and Rappaport, and expressing criticism of those decisions.

Fortunately the well reasoned opinions of most Indiana decisions for many years have refused to extend the meaning of the debt limitation provision of the Indiana Constitution to prohibit the creation of new political subdivisions or the financing of local public improvements by bond issues paid for by assessments or special taxes. The common law imposed no debt limitation whatever, and we should not at this late date attempt to turn the clock backward by engrafting additional words into the debt limitation provision of the Indiana Constitution to make it more restrictive than at the time of its enactment."

The case of *Edwards* v. *Housing Authority, etc., supra,* again engages our attenion and we quote therefrom, beginning at page 744 of 19 N. E. 2d, as follows:

"It is contended that the provision of the act, which authorizes housing authorities to issue bonds secured by mortgage upon the housing projects without limitation as to the value of the taxable property within the housing authority, contravenes section 1 of article 13 of the Constitution of Indi-

ana, which prohibits political or municipal corporations from becoming indebted in an amount in excess of 2 per cent of the taxable property within the corporation. By the provision of the act the bonds authorized do not become the debt of any city, town, or county, the state, or any political subdivision thereof. They are not payable out of taxes or any funds or properties other than the funds and properties of the housing authority issuing them. The situation seems identical with that involved in the case of Fox v. City of Bicknell et al., 1923, 193 Ind. 537, 540, 541, 141 N. E. 222, 223. In that case the City of Bicknell was proceeding under an act which authorized it to acquire a water plant and to mortgage the plant and pledge the funds derived from its operation to the payment of bonds. In holding that the issuing of such bonds does not violate the constitutional provision, the court said: 'The city of Bicknell is not agreeing to pay any money raised by taxation, and is not pledging or mortgaging any property that it already has; nor is it pledging income or revenues from any source except the plant. Hence there is no legal or moral obligation on the part of the city to pay, its only duty being to manage the plant and take care of the fund.' The purpose of the constitutional provision is to limit the public indebtedness, which would be a burden upon the public and payable out of taxes or by the sale of public property. The project here authorized contemplates a benefit to the public without any expenditure of public funds other than those incidental amounts involved in the first year's administrative expenses of the authority and in furnishing the usual highway, sanitary and policing services to the territory within the authority. But such expenses are current expenses, payable currently. The property of the housing authority is acquired with the funds raised by the bond issue and other contributions without cost to the public, the state, or any body politic, and at most the bondholders may take back the property or income from the property which they have provided. The scheme in nowise involves an evasion of the spirit or purpose of the constitutional provision."

Also, *Orbison* v. *Welsh, supra,* appears to support the constitutional validity of the created enterprise here involved.

We desire to call attention to the fact that we express neither approval or disapproval of the concept of the legisla-

tive grant and the creation of Appellee Commission; nor do we hazzard an opinion as to the need for efficacy or the soundness of the agency established. Such is not within our duties, responsibilities or constitutional power. We can only express the view as to whether there has been presented, or even involved, a legislative grant of power now attempted to be exercised is within the framework of either the Constitution of the State of Indiana or the Constitution of the United States. We find no sound, reasonable objection to have been presented nor do we, as we attempt to contemplate upon the entire area, scope and effect of the grant, find constitutional invalidity of any attempt to exercise and execute the expressed and implied intentions of a separate and coequal branch of government.

This Nation and its local units of government have come upon hard times. Depressions, wars, lack of exercise of governmental talent, political, social and economic maneuvering have taken their toll. Increased spending, waste and outright mismanagement, or worse, by the Central Government almost have crushed the back of the American taxpayer in attempting to satisfy the voracious appetite of the bureaucrats who appear to have produced a super government and have become untouchable. As a result, the physical plants of our local governmental units—our schools, highway systems and streets, public buildings, sanitation departments, water resources and almost every enterprise of such nature—are completely inadequate or worn out. Necessity for finding new means of providing continuously inflated dollars to maintain and improve the local public facilities for an ever expanding and demanding population has created almost insurmountable problems. The final outcome may be doubtful, but we now find ourselves on a treadmill from which there appears to be no escape until and unless the hearts and minds of men and women resolve honestly and sincerely, with a really dedicated purpose, affirmatively to do whatever may be necessary to

halt the changes in governmental concept now so apparent to objective thinkers. This will not be easy; it will be worth the effort.

The judgment herein, for the reasons stated, based upon heretofore established precedents and under the doctrine of *stare decisis,* is now affirmed.

Arterburn and Lewis, JJ., concur.

Hunter, C. J. and Jackson, J., concur in result.

NOTE.—Reported in 230 N. E. 2d 396.